JESSE FLETCHER, PAUL J. CUMMINS *v.* STATE OF INDIANA.

[No. 3-575A102. Filed August 17, 1976. Rehearing denied December 1, 1976.]

*Harold W. Myers,* of Fort Wayne, for appellant Fletcher, *Thomas L. Ryan,* Deputy Public Defender, of Fort Wayne, for appellant Cummins.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

STATON, P.J.—Fletcher and Cummins were found guilty by a jury of second degree burglary and both were sentenced to the Department of Corrections for a period of not less than two (2) nor more than five (5) years. On appeal, Fletcher and Cummins raise the following issues:

Issue One: Whether State's photographic Exhibits Five and Six were erroneously admitted into evidence?

Issue Two: Whether the trial court erred in admitting Fletcher and Cummins' extrajudicial statements into evidence?

Issue Three: Whether there was sufficient evidence presented by the State to sustain Fletcher and Cummins' convictions?

We affirm.

The facts most favorable to the State establish the following. On December 31, 1973 between 2:00 and 3:00 o'clock A.M., Mrs. Dorothy Holycross looked out her window and

saw two people get out of a car and run towards Dick's IGA Store in Allen County, Indiana. Dick's IGA is located approximately 200 feet from Mrs. Holycross' home. Mrs. Holycross observed the two individuals standing at the front door of the store and then heard glass breaking. She woke her husband, and they both observed the two individuals run out of the store and get into a car. The automobile proceeded down Washington Center Road toward State Road Three. Mr. Holycross called the police and described the vehicle that had driven away as a light-colored car with taillights extending completely across the back of the vehicle.

Also between 2:00 and 3:00 o'clock A.M. on December 31st, Officer Donald Murphy of the Allen County Police Department heard the Fort Wayne city dispatcher put out a call regarding a suspicious vehicle in the area of Dick's IGA. A short time later, the dispatcher reported that the suspicious vehicle was white, that the vehicle contained one or more passengers and that it was last seen on Washington Center Road heading toward State Road Three. Since Officer Murphy was patrolling in the area he turned onto Washington Center Road. The only vehicle he observed on Washington Center Road was a white vehicle which was heading toward State Road Three. This vehicle was occupied by Fletcher, Cummins and another individual. Officer Murphy pulled the vehicle over to investigate, and after he stopped the automobile, he observed Fletcher attempting to cover the contents on the backseat of the automobile with his jacket. In plain view on the backseat, he observed a canister for donations to the mentally retarded, several bills of currency, some loose change, a display case of Timex watches and a crow bar. He recovered approximately $316.00 from the backseat and from Fletcher. Pictures of the contents of the backseat of the automobile were taken at the scene and admitted into evidence at trial as State's Exhibits Five and Six.

Richard Krantz, owner of the IGA business, testified that on the morning of December 31, 1973, he observed that the

store had been broken into and the following items had been stolen: a display of Timex watches, a canister for donations to the mentally retarded and $319.29. Also, at trial, the State presented the testimony of Fort Wayne Police Officer Leroy Cook who questioned both Fletcher and Cummins on the morning of December 31st. Cook testified that during questioning Cummins stated "[I]t looks like you've got a good case against us," and Fletcher said, "[I]t looks like you guys have got us."

## I.

### STATE'S EXHIBITS FIVE AND SIX

At trial, Fletcher and Cummins' trial counsel objected to the admission of the State's Exhibits Five and Six, pictures of the backseat of the automobile, on the ground that there was no proper foundation laid showing chain of custody. On appeal, Fletcher and Cummins contend the pictures were not competent evidence for the reason that the State could have produced the tangible items shown in the pictures themselves. We may not consider this issue on appeal. It is well established that the defendant cannot give one reason for objection at trial and then argue a different objection on appeal. *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407; *Grzesiowski* v. *State* (1976), 168 Ind. App. 318, 343 N.E.2d 305. Fletcher and Cummins' first issue on appeal is waived.

## II.

### EXTRAJUDICIAL STATEMENTS

Fletcher and Cummins' second contention of error is that the trial court should have excluded their extrajudicial statements because they were elicited after Fletcher and Cummins expressed a desire to consult with their attorney. In *Miranda* v. *Arizona* (1966), 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694, in protection of an accused's Fifth Amendment right against self-incrimination, the Supreme Court of the United States held that if an accused

states during questioning that he wants an attorney present, the questioning must cease until attorney is present. See *Pirtle* v. *State* (1975), 263 Ind. 16, 323 N.E.2d 634. Any statements made after a violation of *Miranda* v. *Arizona, supra* cannot be admitted over objection at trial. *Miranda* v. *Arizona, supra*. Also, failure to allow an accused the right to consult with counsel when such consultation is requested during interrogation is a violation of the accused's Sixth Amendment right to counsel and any statements made after the request must be excluded at trial. *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; *see Pirtle* v. *State, supra*.

We have carefully reviewed the record and find no violation of Fletcher's Sixth Amendment right to counsel or his rights under *Miranda* v. *Arizona, supra*. Although there is a possibility of violation of Cummins' right to counsel during questioning, we find any error in the admission of his extrajudicial statement to be harmless beyond a reasonable doubt.

The record discloses that Fletcher and Cummins were questioned separately on the morning of December 31st by Officer Cook of the Fort Wayne Police Department. Before both Cummins and Fletcher were questioned, Officer Cook had each of them read their constitutional rights aloud from an "Advice of Rights" form. Officer Cook then questioned each of them as to whether they understood what they had just read and he further advised them orally as follows:

"[Y]ou have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during all questioning. . . . [I]f you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time."

Both Fletcher and Cummins stated that they understood their rights and both then signed a "Waiver of Rights" form.

Regarding the admissions of Fletcher, Officer Cook testified unequivocally that the admissions were made before Fletcher expressed any desire to speak with his attorney:

"Q. Did he [Fletcher] have a conversation with you before he requested to speak with his attorney?

"A. Yes, sir.

"Q. And what did he say to you and what did you say to him to the best of your recollection?

"A. At this time he was asked if he wanted to get it straightened out in reference to the details of the burglary.

"Q. And what did he say to you?

"A. He answered, 'it looks like you guys have got us.' I then stated asking him about how they got the money out of the safe. And he indicated that the safe was unlocked. At this time, I said, 'well, why don't you talk to us in detail and get it straightened out.' He said, 'after I talk to attorney Harold Myers, I may talk to you.'

\* \* \* \* \* \*

"Q. Sir, now, it sort of—so that everybody is thoroughly acquainted with the sequence of events here, there was no mention of hiring an attornty or calling an attorney prior to him making this statement?

"A. No, sir."

Officer Cook's testimony regarding the questioning of Cummins is less than clear regarding the sequence of events:

"Q. Ok, Sergeant, did you ask him [Cummins] if he could afford an attorney?

"A. Yes, sir, I even offered him the telephone to call one.

"Q. Didn't he in fact say he wanted to talk to me?

"A. No, sir.

"Q. He never at any time told you that?

"A. No, sir, he said he was going to talk to you, and after he talked to you then he'd talk to me.

"Q. I see. I see. So he wanted to talk to me. Is that correct?

"A. Yes, sir. Not right then though, he said he would contact you.

"Q. So in spite of his wanting to talk to me, you went ahead and asked him some questions?

"A. You mean further?

"Q. Yes.

"A. Yes, sir. I asked him where he was employed.

\* \* \* \* \* \*

"Q. Did you then have a conversation with Mr. Cummins?

"A. The only conversation we had was, I told him I says, 'Paul, I would like for you to get this straightened out.' He made the statement, 'it looks like you've got a good case against us.' . . ."

There was no testimony given clarifying Officer Cook's above remarks. His testimony regarding Cummins' statement may be interpreted in several ways. The trial court's interpretation of the above testimony was that Cummins was willing to answer questions without his attorney but that he was going to talk to his attorney in the future.

Even if Cummins had expressed a desire to have his attorney present during any future questioning, we conclude that any error in the admission of Cummins' statement —"it looks like you've got a good case against us"— to be harmless.

The questioning of Cummins after a request for his attorney may be in violation of both *Miranda* v. *Arizona* and Cummins' Sixth Amendment right to counsel; therefore, we must consider whether this possible constitutional error was harmless beyond a reasonable doubt. See *Chapman* v. *California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington* v. *California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Greer* v. *State* (1969), 252 Ind. 20, 245 N.E.2d 158; *Moreno* v. *State* (1975), 166 Ind. App. 441, 336 N.E.2d 675.

First of all, the extrajudicial statement made by Cummins was neither an admission nor a confession. In *Green* v. *State* (1973), 159 Ind. App. 68, 304 N.E.2d 835, this Court discussed the definitions of both a confession and an admission as follows:

"As stated in Wharton's Criminal Evidence (13th ed.) § 663:

'An admission is an acknowledgment by the accused of certain facts which tend, together with other facts, to establish his guilt; while a confession is an acknowledg-

ment (*sic*) of guilt itself. An admission, then, is something less than a confession and, unlike a confession, putting to one side the problem of corroboration, an admission is not sufficient in itself to support a conviction.'

"The distinction was well drawn in State v. Masato Karumai (1942) 101 Utah 592, 126 P.2d 1047 as follows:

'A confession is the admission of guilt by the defendant of all the necessary elements of the crime of which he is charged, including the necessary acts and intent. An admission merely admits some fact which connects or tends to connect the defendant with the offense but not with all the elements of the crime.' "

Cummins' statement—"it looks like you've got a good case against us"—is neither an acknowledgment of guilt nor an admission of some fact connecting Cummins with the offense. Cummins was merely commenting on his opinion of the State's evidence against him. Even if the jury could have inferred some culpability on the part of Cummins from this statement, the probable impact of such an equivocal statement in light of the other evidence of probative value supporting the jury's verdict is negligible and harmless error beyond a reasonable doubt.

## III.

## SUFFICIENCY OF THE EVIDENCE

Fletcher and Cummins were convicted of second degree burglary. The statute, IC 1971, 35-13-4-4 (Burns Code Ed.), provides:

"(b) Whoever breaks and enters into any boat, wharf-boat, or other watercraft, interurban car, streetcar, railroad car, automobile, an attached or unattached trailer, semitrailer or camper; or airplane, or other aircraft, or any building or structure other than a dwelling house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, and upon conviction shall be imprisoned not less than two [2] years nor more than five [5] years."

Fletcher and Cummins contend that the evidence presented at trial was insufficient to establish that they were the persons

who broke into the IGA store on December 31, 1973. They contend that the Holycross's could not identify them as the intruders, and Krantz did not specifically identify the items found in the backseat of their car as those items stolen from his IGA store.

When questions concerning the sufficiency of the evidence are presented on appeal, this Court will consider only the evidence most favorable to the State together with all reasonable inferences to be drawn therefrom. We will neither weigh the evidence nor determine the credibility of the witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554; *Mikel* v. *State* (1975), 164 Ind. App. 26, 326 N.E.2d 621.

A conviction may be sustained in whole or in part upon circumstantial evidence so long as the evidence is of such probative value that a reasonable inference of guilt beyond a reasonable doubt may be drawn therefrom. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666; *Mikel* v. *State, supra.* When the sufficiency of circumstantial evidence is questioned on appeal, this Court must examine the evidence carefully, not to determine whether every reasonable hypothesis of innocence is overcome, but to determine whether an inference may be reasonably drawn tending to support the finding of the trier of fact. *McAfee* v. *State, supra.* A conviction that rests in whole or in part upon circumstantial evidence will not be reversed unless this Court can state as a matter of law that reasonable persons could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233; *Mikel* v. *State, supra.*

From the evidence set out above, we conclude that the jury could reasonably find Fletcher and Cummins guilty beyond a reasonable doubt of the second degree burglary of Dick's IGA store. The elements of second degree burglary are: (1) the breaking (2) and entering

(3) into a building other than a dwelling house or place of human habitation (4) with the intent to commit a felony therein. IC 1971, 35-13-4-4 (Burns Code Ed.); *O'Hara* v. *State* (1975), 165 Ind. App. 11, 330 N.E.2d 396. The evidence most favorable to the State presented at trial established that Dick's IGA store was probably broken into between the hours of 2:00 and 3:00 o'clock A.M. on the morning of December 31, 1973. The owner of the IGA business testified that certain specific items were missing: a Timex watch display, a canister for donations to the mentally retarded and $319.29. Fletcher and Cummins were stopped between 2:00 and 3:00 o'clock A.M. on the morning of December 31, 1973 in the vicinity of Dick's IGA in a vehicle matching the description of the vehicle seen on the premises of Dick's IGA. Officer Murphy, who stopped their vehicle, observed Fletcher attempting to cover items in plain view on the backseat of the automobile with his jacket. Those items were: a Timex watch display, a canister for donations to the mentally retarded, bills and loose change. Officer Murphy recovered approximately $316.00. Additionally, Fletcher admitted to Officer Cook at police headquarters that he and Cummins obtained money from the IGA safe because the saft was unlocked. From the above evidence, the jury could reasonably infer that Fletcher and Cummins participated in the break-in of Dick's IGA store with the intent to commit a felony therein.

The judgment of the trial court is hereby affirmed.

Hoffman, J., concurs; Garrard, J., concurs in result.

NOTE.—Reported at 352 N.E.2d 517.