WHITE TRUCK SALES OF INDIANAPOLIS, INC., Appellant (Defendant Below),

v.

The SHELBY NATIONAL BANK OF SHELBYVILLE, Indiana, Appellee (Plaintiff Below).

No. 2–780A225.

Court of Appeals of Indiana, Second District.

May 20, 1981.

Stephen A. Gross, Burris & Gross, Indianapolis, for appellant.

Stephen C. Moberly, Shelbyville, John G. Forbes, Forbes, Mercer & Pennamped, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

White Truck Sales of Indianapolis, Inc, (White) appeals a judgment rendered against it in favor of the Shelby National Bank of Shelbyville, Indiana (Shelby) based on White's failure to perfect a lien on the Certificate of Title of a truck sold by White to a third party who defaulted, claiming, *inter alia,* that White's endorsement on the check requiring recognition of Shelby's lien was not an enforceable contract.

We affirm.

## FACTS

The facts most favorable to the judgment of the trial court are:

On March 22, 1976 Jack Gevedon (Gevedon) agreed to buy a used 1973 Auto-Car tractor truck from White. He arranged financing with Shelby, which issued a check for $21,575.00 payable to White and Gevedon. The endorsement form placed by Shelby on the back of the check reads as follows:

This check together with the down payment in cash and or trade-in constitutes payment in full for *1–1974 Auto-Car*, Serial No. *AB006HB071483*

By endorsing, each payee warrants and covenants that an application has been or promptly will be filed for a certificate of title to said property in the name of *William J. Gevedon* subject to a lien in favor of

The Shelby National Bank

49 Public Square

Shelbyville, Indiana 46176

Both Gevedon and White endorsed the check and it was cashed by White. Gevedon took possession of the truck.

In assigning the Certificate of Title to Gevedon, White failed to mark Shelby as a lien holder. Consequently, Gevedon was issued a clear Certificate of Title by the Bureau of Motor Vehicles.

On September 20, 1976, Gevedon approached Shelby and obtained a second loan of approximately $6,000.00 to pay for repairs to the truck. Shelby did not have the Certificate of Title to the truck in its possession. Nevertheless, the second loan was approved and consolidated with the first. At the date of consolidation, the amount owing on the first loan had been reduced to $20,903.66. The first loan was merged into the second. Shelby assumed the loan was secured by the collateral of the truck.

As we have seen, however, that assumption was wrong. Armed with a clear title, Gevedon sold the truck and stopped making payments. Shelby later acquired a default judgment against him, but has been unable to collect because he skipped.

Shelby therefore proceeded against White under the terms of the check endorsement. Following a bench trial, Shelby was awarded the amount owing on the original loan ($20,903.66) plus interest thereon, for a total judgment of $26,765.11. White perfected this appeal.

## ISSUES

White presents the following issues for review:

1. Was an independent, enforceable contract created between Shelby and White by White's endorsement and negotiation of the check?

2. Was any contract created by White's endorsement and negotiation void by operation of I.C. 9–1–2–1 (the Auto Title Statute)?

3. Did Shelby waive its rights against White?

4. Was a novation effected thereby extinguishing White's duty to create a lien in favor of Shelby?

5. Did Shelby mitigate damages?

## DECISION

*ISSUE ONE*—Was an independent, enforceable contract created between Shelby and White by White's endorsement and negotiation of the check?

*CONCLUSION*—A binding contract between Shelby and White was created by White's endorsement and negotiation of the check.

Our inquiry is guided by general contract principles. Although the check in question is negotiable paper, the form of endorsement as accepted by White falls within the provisions of I.C. 26–1–3–119:

Other writings affecting instrument.— (1) *As between the obligor and his immediate obligee* or any transferee *the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction*, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written

agreement if he had no notice of the limitation when he took the instrument. (emphasis added).

We deal here only with parties to the transaction itself: no holders in due course are involved. Accordingly, we consider the endorsement as a simple contract between the parties.

Furthermore, I.C. 9–1–2–1 (the Auto Title Statute) provides for the method of perfecting liens on vehicles and prescribes the conditions necessary to perfect such liens. It therefore controls in the face of the more general lien perfection language contained in Indiana's enactment of the U.C.C. (Ind. Code Title 26). *Indiana Waste Systems, Inc. v. Board of Commr's. of the County of Howard* (1979), Ind.App., 389 N.E.2d 52.

A contract requires offer and acceptance to be enforceable. J. Calamari, J. Perillo, *The Law of Contracts* (1970) §§ 11–37. Indiana courts recognize this basic precept. *State ex rel. Crooke v. Lugar* (1976), 171 Ind.App. 60, 354 N.E.2d 755; *Cal Hirsch & Sons Iron and Rail Company v. Peru Steel Casting Company* (1911), 50 Ind.App. 59, 96 N.E. 807.

The trial court, acting upon the evidence placed before it, found that by endorsing and cashing the check White accepted the benefit of Shelby's financing Gevedon, and accepted the detriment of the duty of placing a lien on the Certificate of Title in favor of Shelby. Sufficient evidence was presented to allow the court to find that any contract between White and Shelby was supported by consideration in the form of the financing arrangements making it possible for Gevedon to buy the truck. The express wording of Shelby's endorsement states that "[b]y endorsing, *each* payee warrants and covenants that an application ... promptly will be filed *for* a Certificate of Title ... subject to a lien in favor of ... Shelby." (emphasis added). The hackneyed maxim that "courts will not make a contract for the parties" prevails. *Standard Land Corp. of Indiana v. Bogardus* (1972), 154 Ind.App. 283, 289 N.E.2d 803.

The trial court properly refused to re-interpret the clear language of Shelby's en-

dorsement. Shelby's offer to pay the check was conditioned on White's (as well as Gevedon's) promise to secure a lien for it on the Certificate of Title. "*Each*" payee covenanted to do so. Under the plain language of the contract each is bound.

White also argues that even if the endorsement created a contract, it is ineffective because the endorsement described the truck as a "1974 Auto-Car" yet a 1973 model was the subject of the transaction. Another venerable maxim of contract law states that a contract will be read as a whole. *Walb Construction Company v. Chipman* (1931), 202 Ind. 434, 175 N.E. 132. Because this contract contains the correct serial number of the truck which was actually sold, White is hard-pressed to show how the mistake regarding the model year could possibly have misled it in this transaction. The parties intended to facilitate the conveyance of a 1973 truck and did so. A clerical error will not defeat the otherwise clear contract. *Russell v. Merrifield* (1891), 131 Ind. 148, 30 N.E. 957.

A final consideration causing us to reject White's invitation to void the contract on the grounds of the mistake in model year is based on the evidence within record showing that Shelby made that mistake by relying on information telephoned to it by *White's* sales clerk. This establishes that both parties at all times were considering the same truck, and also that it would be unjust to deny Shelby recovery on the basis of White's mistake.

*ISSUE TWO*—Was any contract created by White's endorsement and negotiation void by operation of I.C. 9–1–2–1 (the Auto Title Statute)?

*CONCLUSION*—The contract was not voided by operation of this statute.

■ White says that if a contract was created, it was voided by the operation of I.C. 9–1–2–1, the statute providing for the issuance of motor vehicle titles. White extracts a portion of that statute which provides that the application of title shall be acknowledged under oath, "with a statement of the applicant's title, and of any

liens or encumbrances . . . ," and that therefore the commitment was Gevedon's, and White could not be penalized for failing to do another's duty. This is hardly an equitable position and certainly not a persuasive legal one.

The same statute (I.C. 9–1–2–1) White relies on in its policy argument against enforcement of the contract provides that if there is a lien, "title shall be delivered to the person named to receive the same in the application for such certificate." The fact this statute provides for delivery to a third person supports the trial court's conclusion that the contract formed between Shelby and White is enforceable. Additionally, according to facts found by the trial court, such arrangements benefiting third parties are consistent with trade practice. (R. at 131). However, the mere fact the statute imposes a duty on the applicant (Gevedon) to state his title and any liens on the vehicle is not in the slightest inconsistent with White's independent duty by contract (the endorsement) to cause the Certificate of Title to be issued subject to Shelby's lien. It was on this basis that White was paid. No language in this statute explicitly or implicitly voids the endorsement.[1]

Additionally, courts are not eager to declare contracts void. "The parties of a contract are free to include any provisions therein they desire which do not offend the public policy of our state." *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155, 159. Testimony before the trial court established that the supervision by a vehicle dealer of the execution of applications for title is a common business practice.

*ISSUE THREE*—Did Shelby waive its rights against White?

*CONCLUSION*—Shelby did not waive its rights against White.

The gist of White's argument on this point is that Shelby's failure to protect itself before or at the time of the second loan to Gevedon constituted a waiver of Shelby's rights against White because Shelby's ac-

tions were commercially unreasonable, and inconsistent with its rights under the endorsement contract.

■ White correctly states that whether there has been a waiver is determined solely by the actions of the party holding the right, without reference to the conduct of the parties affected thereby. *Lafayette Car Wash, Inc. v. Boes* (1972), 258 Ind. 498, 282 N.E.2d 837. What White submits is a factual controversy previously unsuccessfully presented to the trial court, possibly forgetting that we can not set aside the findings of the trial court unless clearly erroneous, *Beech Grove v. Schmith* (1975), 164 Ind.App. 536, 329 N.E.2d 605, and that we do not reweigh the evidence nor judge the credibility of the witnesses, *Jones v. State* (1978), 268 Ind. 640, 377 N.E.2d 1349; *Indiana Department of State Revenue v. Marsh Supermarkets, Inc.* (1980), Ind.App., 412 N.E.2d 261; T.R. 52(A), but will affirm the judgment if there is evidence to support it. *First National Bank of Mishawaka v. Kamm* (1972), 152 Ind.App. 353, 283 N.E.2d 563.

■ White interprets Shelby's actions at the time of the second loan to Gevedon to indicate that Shelby intended not to look to the endorsement nor White for security. It is equally plausible from the evidence to construe Shelby's actions as indicating that Shelby relied on White's promise . . . as the trial court obviously concluded. Because we must indulge in all reasonable presumptions in favor of the rulings and judgments of the trial court, *Department of State Revenue v. Boswell Oil Company* (1971), 148 Ind.App. 569, 268 N.E.2d 303, we can not reverse the trial court on this issue.

*ISSUE FOUR*—Was a novation effected thereby extinguishing White's duty to create a lien in favor of Shelby?

*CONCLUSION*—Novation did not result from the loan consolidation.

White contrives an argument that because Shelby, without contacting White, "started from scratch" with Gevedon in ex-

---

1. *See*, I.C. 26–1–2–208.

ecuting the second installment note, White was released from "any previously existing obligation." This is White's waiver argument dressed in the different but ill-fitting clothing of novation.

■ The elements of novation are:

1. An existing and valid contract;
2. All parties must agree to the new contract;
3. The new contract must be valid;
4. The new contract must extinguish the old one;

*Pope v. Vajan* (1889), 121 Ind. 317, 318, 22 N.E.2d 308.

*Indianapolis Morris Plan v. McAtee* (1955), 125 Ind.App. 372, 125 N.E.2d 261, 263.

■ White may argue novation but to no avail. White claims the second promissory note constitutes the novation while the contract it seeks to discharge by novation is the agreement, evidenced by the check, wherein it agreed to "perfect" Shelby's lien, a contract separate and apart from the original promissory note between Shelby and Gevedon.

In *Boswell v. Lyon* (1980), Ind.App., 401 N.E.2d 735, the Court of Appeals of Indiana had occasion to review a land sale contract in light of the law of novation. The Court said:

> The document before us assigned the rights and interests of Boswell and Snyder and delegated contractual obligations to Beatties and no more. The agreement did not mention novation, relieving contractual liabilities, substitution of parties to the contract, or extinguishing the old contract. Without some such indicator, we cannot conclude that this assignment was equivocal or uncertain or that a novation could have been in any way intended.

*Id.* at 742.

Here, as White concedes, there was no language in the second note denoting any intention whatsoever to create a novation, relieve contractual liabilities, substitute parties, or extinguish the old contract. Rather, White urges that the intent is implied. However, the second note not only lacks express novation language but it also lacks any language from which the fact-finder could reasonably find an intent to discharge White from its agreement and to look solely to Gevedon. Indeed, the evidence adduced by Shelby at trial was that it had no intent to relieve White of its contractual liability. Judgment was granted Shelby *only* on the portion of the first loan which remained unpaid (plus interest thereon). Also, the very nature of a lien placed on the title of a motor vehicle encompasses all claims the lienholder has against the owner, whether they be in existence at the time the lien is executed or come into being later, but prior to extinguishment of the lien. *R.* at 224; *Community State Bank v. Crissinger* (1950), 120 Ind.App. 25, 89 N.E.2d 78.

Having determined from the evidence that there was no agreement of the parties nor extinguishment of the first lien, the trial court properly concluded there was no novation.

*ISSUE FIVE*—Did Shelby mitigate damages?

*CONCLUSION*—The trial court took into account any failure by Shelby to mitigate damages.

■ It has been held that

> [m]itigation of damages is a matter of defense, the burden of which is on the party held liable to respond in damages. *Jones v. Abriani* (1976), Ind.App., 350 N.E.2d 635; *Hirsch v. Merchants National Bank* (1975), 166 Ind.App. 497, 336 N.E.2d 833. The evidence as to whether the damages were satisfactorily mitigated is in conflict ... We will not invade the province of the finder of fact and weigh the evidence. This is not our function.

*Endsley v. Game-Show Placements, Ltd.* (1980), Ind.App., 401 N.E.2d 768, 773.

White's argument that Shelby failed to mitigate damages is based on Shelby's failure at the time of the second loan "to contact White or the Bureau of Motor Vehicles regarding the certificate's whereabouts ..." (P. 17 Appellant's Brief). This is

easily answered. The judgment was entered against White *only* for the outstanding balance (plus interest) of the *first* loan, a loan entwined with White's failure to record the lien. Shelby received no recovery from White for the second increment loaned to Gevedon. There is no other evidence of failure to mitigate damages.

Finally, we observe that it would be illogical to require Shelby to mitigate damages when it was without knowledge of Gevedon's breach. To do so would read into contract law a requirement of care on the part of an aggrieved party going beyond the bounds of presently existing duties.

Accordingly, the trial court is affirmed.

AFFIRMED.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.