**John H. OCH, Jr., Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 2–581A168.

Court of Appeals of Indiana,
Second District.

Jan. 28, 1982.

Frank M. Maley, Charles E. Johnson, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

John H. Och, Jr. (Och) appeals his conviction of failure to collect full premium on a bail bond, a Class D Felony (I.C. 35–4–5–

40) [1] alleging, *inter alia*, that "a thing of value" (car title) was received by him in addition to cash so that a full premium was paid.

We reverse.

## FACTS

The facts most favorable to the decision of the trial court are as follows:

In March, 1979 Scott Leppard (Leppard) was incarcerated in the Marion County Jail on charges of entering to commit a felony. Leppard contacted Indianapolis police detectives who were investigating "credit bonding," and discussed with them the possibility of negotiating the removal of certain other charges pending against him in exchange for his assistance in the bondsman project. Subsequently, Leppard's bond was reduced to $7500, and an habitual offender charge which was pending against him was dismissed.

Leppard then contacted Och by telephone to discuss with him the writing of a bail bond. Leppard placed the calls from the Indianapolis Crime Action Team offices, where the conversations were tape recorded. After considerable discussion between Leppard and Och, Och agreed to write a $7500 bail bond for a premium of $750. Och was then given $500 in cash and the title to Leppard's car.

The car title certificate given to Och was originally issued to one Maryland F. Mays (Mays). The certificate had been notarized; Mays had signed away his interest in the car by executing the seller's blank, and Sandy Kay Griffin (Griffin), Leppard's girlfriend, had filled in the blank as purchaser. The undisputed evidence was that Leppard owned the car, although Griffin's name was on the reverse as purchaser. The section of the certificate for the assertion of lien interests had been left blank.

Och was indicted November 16, 1979 for a violation of I.C. 35-4-5-40, failure to collect full premium on a bail bond. Following a jury trial which was held February 23-24, 1981, Och was convicted as charged. He was given a two year suspended sentence, and one year of probation.

## ISSUE

Due to our resolution of this case, we consider only the following issue:

Did the trial court err in failing to find that the evidence most favorable to the State showed that cash and a "thing of value" were received by Och as full premium for the bond executed?

## DECISION

CONCLUSION—We conclude that no reasonable inference can be drawn from the evidence most favorable to the State that Och received cash and a "thing of value" which were of less value than full premium for the bond written.

As an appellate court, we may review the sufficiency of evidence to determine not whether an inference is overcome, but to determine whether an inference may be reasonably drawn, tending to support the finding of the trier of fact. *Bruce v. State*, (1978) Ind., 375 N.E.2d 1042; *Ruetz v. State*, (1978) Ind., 373 N.E.2d 152; *McAfee v. State*, (1973) 259 Ind. 687, 291 N.E.2d 554; *Fletcher v. State*, (1976) Ind.App., 352 N.E.2d 517.

In this case, if there is no reasonable inference from the evidence that the value of what Och received from or on behalf of Leppard was less than the full premium due, then we must reverse. It is "credit bonding" the statute is designed to stop. So we must carefully analyze the transaction preceding the issuance of Leppard's bond to determine if there was something more than an unsecured promise to pay at a future time, *i.e.*, whether a full premium was paid in money or money's worth.

■ Och was given $500.00 in cash. Griffin, Leppard's girlfriend who signed the

---

1.  A bail bondsman who knowingly or intentionally executes a bail bond without collecting in full a premium therefore, at the premium rate as filed with and approved by the commissioner, commits a Class D felony.

title as purchaser, gave Och the title to Leppard's car, a 1967 Pontiac GTO coupe. Uncontroverted testimony established that although the section on the reverse of the Certificate of Title labeled "Assisment [sic] of Title" showed Griffin as the purchaser (and presumably the new owner), the car was Leppard's. Following the receipt of these assets, Och wrote the bond.

Crucial to our inquiry is the Certificate of Title given to Och. The reverse side thereof is as follows:

Defendant's exhibit 2, *R.* at 211.

Uncontroverted testimony was that when this certificate was given to Och, all parties, including Och, thought that it was an "open" title, capable of conferring absolute ownership of the car by being filled in by the possessor. This belief would appear to be erroneous because although signed by the seller (Maryland F. Mays) and notarized, the purchaser's blank had been completed by Griffin. Thus by normal procedure in order to convey title in the car, the certificate would have to be filed with the Bureau of Motor Vehicles, and a new one issued in Griffin's name who would have to then assign her interest. *See* I.C. 9–1–2–1; 140 IAC 6–1–11. The State's assumption

throughout these proceedings that the certificate was not an "open" title in the sense of an ability to confer absolute ownership was correct. But the State has erroneously assumed that the certificate could vest *no* property interest in Och. As can be readily seen from the portion of the certificate reproduced above, the space for the assertion of lien interests in the car was left blank. In order to assert a lien interest, Och would only have had to complete that section and submit the certificate to the Bureau of Motor Vehicles pursuant to 140 IAC 6–1–11(D). *See also White Truck Sales v. Shelby National Bank*, (1981) Ind. App., 420 N.E.2d 1266, 1270. The certificate in Och's possession was thus capable of conferring some valuable interest to him.[2]

2. We observe that neither the State nor Och elicited clear testimony as to what the status of the Certificate of Title was. The following are the only portions of testimony which colorably shed light on that issue:

Q. Are you familiar with the titling method of—method of titling automobiles here in Indiana?

A. You must obtain a title from the Bureau of Motor Vehicles.

Q. And if a title were issued to a person or a person were the possessor of a title of a car, and they physically took that title and handed it to someone without signing the title over, would they have transferred the ownership of that automobile?

A. No, sir.

Q. In fact, until such time as the title is signed over to the person it's handed to, what is that title worth to the person it's handed to?

Indeed, Leppard described the agreement which was entered into with Och as creating a lien. Leppard stated that although he still owned the car, Och would return the title upon full payment of the remaining $250 which was due.

Having determined that Och received something of value from Leppard in the form of the title, we must next ascertain whether there was a reasonable inference from the evidence that the value of the interest so received constituted less than $250. T.R. 52. The delivery of this title was no empty gesture.

The car in question was a 1967 Pontiac GTO. The only evidence regarding its value is a statement by Leppard that it was worth $1200 (R. at 300) and Och's uncontroverted testimony that the car was in excellent condition and worth $250. (R. at 351). Finally, Leppard's description of a lien relationship in which Och would retain the title certificate until he was paid the $250, and the fact that Och never relinquished the title despite having been paid $150 of the indebtedness by Leppard at a later date, established a course of assertive conduct indicating that Och considered the interest given him in the certificate to be worth at least $250. In light of the uncontroverted nature of the foregoing evidence we are driven to the conclusion that the State did not discharge its burden of proof that the interest received was worth less than $250. The Certificate of Title which was placed in evidence showed, as a matter of law, that it was capable of conferring some interest, and the *only* evidence regarding the value of that interest showed that it was at least worth $250. Thus there is no reasonable inference to be found which favors the State's case, and therefore we must reverse.

Our conclusion that the evidence was insufficient is based on the statute under which Och was prosecuted (IC 35–4–5–40) which requires that the State prove that full premium was not received:

A bail bondsman who knowingly or intentionally executes a bail bond without collecting in full a premium therefore, at the premium rate as filed with and approved by the commissioner, commits a Class D felony.

The statute does not explicitly require that the "premium" be paid in cash nor does it imply that "collecting in full" excludes a *secured* promise to pay. The trial court had before it testimony to this effect:

"Premium as a word includes many things. As I said, either cash or things of value."

R. at 165, testimony of Robert Clegg, Assistant to the Commissioner, Indiana Department of Insurance.

Q. Now, if I had a $750 premium to make, could I pay for that in cash—part in cash and part in merchandise?

A. If the ownership to whatever merchandise was in effect was [sic] transferred to the bondsman so it now became his property, yes, sir.

Q. There wouldn't be any violation of State law there?

A. Not if the premium was paid in full.

R. at 167–78, testimony of Robert Clegg.

Also, the administrative regulations pertaining to bail bondsmen anticipate that assets other than cash may be received for a

---

A. I don't know. That's a subjective judgment for the person that holds the title.
Q. But the person who gets that title couldn't take it out and sell that car unless the title had been signed over to them, could they?
A. No.
R. at 170, testimony of Robert L. Clegg, Assistant to the Commissioner, Indiana Department of Insurance. It is noteworthy that the foregoing testimony consists only of hypothetical questions, with no attempt having been made to connect Clegg's testimony to the evidence which was later admitted.

Q. Now, that—Defendant's Exhibit Two, that car title would that entitle Mr. Och to sell that automobile?
A. Yes. All he'd have to do is put his name on the there and get it notorized, an open title.
R. at 252, testimony of Scott Leppard. No attempt was made to elicit any testimony regarding the specific interests which could or could not be conveyed by the title certificate which was later admitted as evidence in this case.

bond. For example, a bondsman is required to record "[i]f any valuable consideration other than money was received in connection with a bail transaction." 760 IAC 1–6–16(i). Even more enlightening is the language found at 760 IAC 1–6–16(k) which provides that among the records required to be kept by a bondsman is

> A separate book record which shall show the date of receipt of any collateral as a guarantee in a bail transaction, the name of the person from whom it was received, the name of the person receiving it, a completed description of the collateral, the amount of bail guaranteed, *the amount of premium guaranteed* and the disposition of the collateral. If the collateral was returned, the date of its return and the name of the person to whom it was returned.

(emphasis added). This administrative regulation, promulgated by the agency in charge of the administration of the Acts, obviously contemplates the receipt of non-cash collateral to *guarantee premium.* Only if premium were unpaid would it need to be guaranteed. This regulation effects I.C. 35–4–5–26, as a part of the same chapter of the code as the statute which Och was accused of violating.

As we persistently reach for consistency with Indiana Supreme Court cases on a given subject, we are relieved to find *State v. Bigbee,* (1973) 260 Ind. 90, 292 N.E.2d 609. There the court defined "credit bonding," the offense prohibited by the predecessor of the statute under which Och was prosecuted, as "executing a bond merely on the *unsecured* promise to pay the note at some future date." *Id.* 292 N.E.2d at 610. (emphasis added). Given the fact that the regulations quoted above were enacted in 1963, predating *Bigbee,* we conclude that *Bigbee,* in finding the statute to be a proscription of the execution of a bond for an *unsecured* promise to pay, took cognizance of and preserved the legislative and administrative intent to allow properly secured transactions.

Even if I.C. 35–4–5–40 could be construed as prohibiting secured promises to pay, we would be bound to interpret that statute in favor of the defendant, and resolve the ambiguity in his favor. Criminal statutes are to be strictly construed. *Murray v. State,* (1957) 236 Ind. 688, 143 N.E.2d 290; *Simmons v. State,* (1955) 234 Ind. 489, 129 N.E.2d 121; *McCormick v. State,* (1978) Ind.App., 382 N.E.2d 172. They are to be construed against the State. *State v. Gilbert,* (1966) 247 Ind. 544, 219 N.E.2d 892. The object of this rule of interpretation is to establish a rule of certainty for the protection of the individual. *Caudill v. State,* (1946) 224 Ind. 531, 69 N.E.2d 549. Such a rule is also in keeping with the presumption of innocence. In order for an act to be within a penal statute, it must be clearly within both the spirit and the letter of the statute. *Pontarelli v. State,* (1931) 203 Ind. 146, 176 N.E. 696; *State v. Lowry,* (1906) 166 Ind. 372, 77 N.E.2d 728; *Lasko v. State,* (1980) Ind.App. 409 N.E.2d 1124.

Lastly, the record in this case indicates that Och may not have filed certain forms and reports as required by administrative regulations duly promulgated pursuant to I.C. 27–1–3–7. Any such omission may be a violation of I.C. 35–4–5–41, which states that reckless violation of the Indiana Code chapter regulating bail bonds is a Class B Misdemeanor. (*But see,* I.C. 35–41–4–2(2)). Violation of that statute requires proof of different elements than the statute under which Och was prosecuted, and his omissions (if any) in filing reports regarding the transaction with Leppard do not bolster the State's case under the failure to collect full premium statute. The two statutes proscribe different conduct.

Because the State failed to present evidence that Och accepted less than a full premium for Leppard's bond, the conviction must be

REVERSED.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.