# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**WILLIAM JOSEPH JENNER**
Jenner, Pattison, Hensley & Wynn, LLP
Madison, Indiana



FILED
Jun 17 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CRUISIN', INC., d/b/a CRUISIN' AUTO SALES, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | No. 39A01-1309-CC-423 |
| ) | |
| SPRINGLEAF FINANCIAL SERVICES OF INDIANA, INC., f/k/a AMERICAN GENERAL FINANCIAL SERVICES, ) | |
| ) | |
| Appellee. ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause No. 39D01-1103-CC-304

**June 17, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Cruisin', Inc., d/b/a Cruisin' Auto Sales ("Cruisin'"), appeals the trial court's judgment in favor of Springleaf Financial Services of Indiana, Inc., f/k/a American General Financial Services, Inc. ("Springleaf").[1] Cruisin' raises two issues which we revise and restate as whether the court erred in entering judgment for Springleaf based upon the language of an endorsement placed on a check. We affirm and remand.

FACTS AND PROCEDURAL HISTORY

The facts most favorable to the trial court's judgment reveal that on May 13, 2010, Jennifer George and Cruisin' executed a purchase order wherein George agreed to purchase a 1998 Chevrolet Monte Carlo, vehicle identification number ("VIN") 2G1WW12MSW9131950. The next day, George entered into a loan agreement (the "Loan Agreement") with Springleaf in which Springleaf extended credit to George in the amount of $3,142.65. Pursuant to the agreement, Springleaf issued a check (the "Check") in the amount of $2,500.02 to George and Cruisin' for the purpose of effecting the purchase of the Monte Carlo.[2] The Loan Agreement stated that the loan was to be secured by the Monte Carlo.

George presented the Check to Cruisin' which was accompanied by a letter (the "Letter") to Cruisin' from Springleaf instructing Cruisin' to "[p]lease list us as lienholder on the title for the above vehicle . . . ." Plaintiff's Exhibit D. The Letter identified the Monte Carlo by make, model, and VIN, and it provided Springleaf's address. In addition

---

[1] Jennifer George was also named as a defendant in the action, and the judgment names George as a defendant in the caption. As explained below, George's whereabouts are unknown, and she did not participate at the trial level or in this appeal.

[2] The remaining sum financed to George was "for credit insurance and disability income insurance." Transcript at 17.

to the Letter's instruction to Cruisin', the Check contained an endorsement (the "Endorsement") placed by Springleaf which stated:

> ENDORSEMENT of this check acknowledges receipt of PAYMENT IN FULL for the motor vehicle described below and the title for said vehicle is hereby GUARANTEED to the maker of said check.
>
> Make Chevy Year 1998 Motor Number -2G1WW12MSW9131950[3]
>
> You are authorized to negotiate this check only (1) when account is paid in full (2) when all liens have been satisfied and (3) when title has been mailed to the payor.

Id.

Cruisin' placed Springleaf as the first and only lienholder on the title to the Monte Carlo, but instead of mailing the title to Springleaf, it gave the title to George believing she would take it to the Indiana Bureau of Motor Vehicles ("BMV") to register the vehicle and subsequently deliver the title to Springleaf. Cruisin' negotiated the Check. George did not register the vehicle nor file the title with the Indiana Bureau of Motor Vehicles ("BMV"). She defaulted on the Loan Agreement after making one payment, and her whereabouts are unknown.

On March 30, 2011, Springleaf filed a complaint against George and Cruisin'. On June 9, 2011, Springleaf filed a motion for summary judgment. On August 24, 2011, the court entered a default judgment as to George in the amount of $4,313.77, plus court costs and interest. On March 25, 2013, the court denied Springleaf's summary judgment motion as to Cruisin', and on June 14, 2013, it held a bench trial in which evidence

---

[3] The underlined portions of the Endorsement were entered by hand.

consistent with the foregoing was presented. On September 11, 2013, the Court entered a judgment in favor of Springleaf as follows:

> The Court, having heard the evidence and the arguments of counsel, and having taken this matter under advisement, now finds that a binding contract was created between [Springleaf] and [Cruisin'] when [Cruisin'] negotiated a check issued by [Springleaf] for payment of a 1998 Chevrolet Monte Carlo. The check contained a restrictive endorsement in which the defendant guaranteed title to the vehicle in exchange for the loan proceeds. [Springleaf] further gave [Cruisin'] written instructions to list it as the lienholder on the title.
>
> By negotiating the check and receiving the proceeds, [Cruisin'] accepted the benefit of [Springleaf's] financing and also accepted the duty of perfecting [Springleaf's] lien on the Certificate of Title. [Cruisin'] breached its contractual duty to perfect [Springleaf's] lien by giving the title to [George] who then failed to file the title with the [BMV] and failed to make payments to [Springleaf]. As a result, [Springleaf] has been damaged in the amount of the check it issued to the defendants which is $2,500.02.
>
> **THEREFORE, IT IS CONSIDERED, ORDERED AND ADJUDGED** by the Court that [Springleaf] shall recover from [Cruisin'] the sum of $2500.02 plus court costs of $159.00, for a total amount due of $2779.02.[4] Said sum is to be paid to the Jefferson County Clerk.

Appellant's Appendix at 11-12.

Before addressing Cruisin's arguments, we note that Springleaf did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of

---

[4] We observe that the total amount ordered by the court appears to be in error because the sum of $2,500.02 and $159.00 is $2,659.02. We remand for the court to correct this scrivener's error and enter judgment in the amount of $2,659.02 in favor of Springleaf or, in the alternative, explain in its order on remand why $2,779.02 is the appropriate judgment amount.

4

reversal where that burden properly rests with the appellee. <u>Wright v. Wright</u>, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo*, however. <u>McClure v. Cooper</u>, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

## DISCUSSION

The issue is whether the trial court erred in entering judgment for Springleaf based upon the language of the Endorsement placed on the Check. The trial court entered findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. <u>Menard, Inc. v. Dage-MTI, Inc.</u>, 726 N.E.2d 1206, 1210 (Ind. 2000), <u>reh'g</u> <u>denied</u>. In our review, we first consider whether the evidence supports the factual findings. <u>Id.</u> Second, we consider whether the findings support the judgment. <u>Id.</u> "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." <u>Quillen v. Quillen</u>, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. <u>Menard</u>, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. <u>Id.</u> While we defer substantially to findings of fact, we do not do so to conclusions of law. <u>Id.</u> We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. <u>Yoon v. Yoon</u>, 711 N.E.2d 1265, 1268 (Ind. 1999). We evaluate questions of law *de novo* and owe no deference to a trial court's determination of such questions. <u>Kwolek v. Swickard</u>, 944 N.E.2d 564, 570 (Ind. Ct. App. 2011) (citing <u>McCauley v. Harris</u>, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), <u>reh'g denied</u>, <u>trans. denied</u>), <u>trans. denied</u>.

Cruisin' argues that "[w]hile a contractual duty is often created by a restrictive endorsement, here [Cruisin'] did not breach its contractual duty because [it] fulfilled its duty." Appellant's Brief at 7. Cruisin' states it is undisputed that both it and George endorsed the Check containing the Endorsement, that "[t]here was no evidence presented to show that [Cruisin'] did not place [Springleaf] on the title as a lien holder," that it gave the title to George, and that it was George who failed to register the title with the BMV, "thus failing to perfect [Springleaf's] lien." Id. at 7-8. It argues that, under Peoples Bank & Trust v. Price, 714 N.E.2d 712, 717 (Ind. Ct. App. 1999), trans. denied, George, "as the borrower, had the responsibility to ensure that the financing was secured by perfecting [Springleaf's] lien." Id. at 8. Cruisin' suggests that it complied with both the Endorsement and accompanying Letter and that if Springleaf "expected or required [Cruisin'] to take the title to the [BMV], register the title, and mail it to [Springleaf], then it would have been noted in the letter." Id. Cruisin' also contends that requiring "auto dealerships to register titles wherein financing is involved goes against public policy" because "[t]he financing agreement is between the borrower and the lender" and accordingly "it should be the responsibility of those parties to perfect the lien." Id.

We look to relevant provisions of the Uniform Commercial Code ("UCC"), which governs negotiable instruments including the Check. First, to the extent that Cruisin' and the court in its order describe the Endorsement as a "restrictive endorsement," we note that although it may have been considered a "restrictive endorsement" under the previous version of the UCC,[5] in the current version, adopted in Indiana by Public Law No. 222-

---

[5] Ind. Code § 26-1-3-205, repealed by Public Law No. 222-1993, § 58, was titled "[r]estrictive indorsements" and provided that

1993, § 5, such language is no longer described as a "restrictive endorsement." Specifically, Ind. Code § 26-1-3.1-206, titled "restrictive endorsement," provides in Subsection (b) that "[a]n endorsement stating a condition to the right of the endorsee to receive payment does not affect the right of the endorsee to enforce the instrument," and that "[a] person paying the instrument or taking it for value or collection may disregard the condition, and the rights and liabilities of that person are not affected by whether the condition has been fulfilled." Also, Comment 2 to UCC § 3-206, upon which Ind. Code § 26-1-3.1-206 is based, explains that "[s]ince the indorsements referred to in subsections (a) and (b) are not effective as restrictive indorsements, they are no longer described as restrictive indorsements."

Other provisions, however, are applicable to language such as the Endorsement. Specifically, Ind. Code § 26-1-3.1-117, titled "[o]ther agreements affecting instrument," provides:

> Subject to applicable law regarding exclusion of proof of contemporaneous or previous agreements, *the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is*

---

An endorsement is restrictive which either

 (a)  *is conditional*; or

 (b)  purports to prohibit further transfer of the instrument; or

 (c)  includes the words "for collection," "for deposit," "pay any bank," or like terms signifying a purpose of deposit or collection; or

 (d)  otherwise states that it is for the benefit or use of the endorser or of another person.

(Emphasis added).

*incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement.* To the extent an obligation is modified, supplemented, or nullified by an agreement under this section, the agreement is a defense to the obligation.

(Emphasis added).

Also, we note that Ind. Code § 26-1-3.1-106(a) provides in relevant part that "for the purposes of IC 26-1-3.1-104(a), a promise or order is unconditional unless it states: (1) an express condition to payment . . . ." Ind. Code § 26-1-3.1-104(a) defines "negotiable instrument" and provides that it:

means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) is payable on demand or at a definite time; and

(3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, *but the promise or order may contain*:

(A) *an undertaking* or power *to* give, maintain, or *protect collateral to secure payment*;

(B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

(Emphases added). Thus, provisions of the UCC, codified in Indiana under Ind. Code § 26-1-3.1-117 and Ind. Code § 26-1-3.1-106(a), allow for negotiable instruments such as

8

the Check to contain express conditions to payment, including separate agreements obligating the party entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement. Such conditions may include an undertaking to protect certain collateral to secure payment.

Our analysis of the Endorsement is therefore guided by general contract principles. See Ind. Code §§ 26-1-3.1-106(a), -117; see also White Truck Sales of Indianapolis, Inc. v. Shelby National Bank of Shelbyville, 420 N.E.2d 1266, 1268 (Ind. Ct. App. 1981) (holding under the predecessor statute to Ind. Code §§ 26-1-3.1-106 and -117 that an independent and enforceable contract was created between the seller of a tractor truck and bank providing financing for the sale when the seller endorsed and negotiated a check containing the endorsement). "Interpretation of a contract is a pure question of law and is reviewed de novo." Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 252 (Ind. 2005). If a contract's terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. Id. Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. Id. "We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." Rogers v. Lockard, 767 N.E.2d 982, 992 (Ind. Ct. App. 2002). "A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms." Beam v. Wausau Ins. Co., 765 N.E.2d 524, 528 (Ind. 2002), reh'g denied. "Rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable expectations." Johnson v. Johnson,

9

920 N.E.2d 253, 256 (Ind. 2010). "When a contract's terms are ambiguous or uncertain and its interpretation requires extrinsic evidence, its construction is a matter for the fact-finder." Id.

This Court addressed the effect of endorsements establishing contracts placed on the back of a check in White Truck. In that case, Jack Gevedon agreed to purchase an "Auto-Car tractor truck" from White Truck Sales of Indianapolis, Inc. ("White"), and Gevedon arranged financing with the Shelby National Bank of Shelbyville, Indiana ("Shelby"), who issued a check payable to White and Gevedon. 420 N.E.2d at 1268. The check contained an endorsement on the back which read:

> This check together with the down payment in cash and or trade-in constitutes payment in full for 1-1974 Auto-Car, Serial No. AB006HB071483
>
> By endorsing, each payee warrants and covenants that an application has been or promptly will be filed for a certificate of title to said property in the name of William J. Gevedon subject to a lien in favor of
>
> The Shelby National Bank
>
> 49 Public Square
>
> Shelbyville, Indiana 46176

Id. Both Gevedon and White endorsed the check, White cashed the check, and Gevedon took possession of the truck. Id. White assigned the title to Gevedon but failed to mark Shelby as a lienholder, and accordingly Gevedon was issued a clear Certificate of Title by the BMV. Id. Gevedon ultimately sold the truck and stopped making payments on the loan, and Shelby acquired a default judgment against him but was unable to collect because his whereabouts were unknown. Id. Shelby then filed a complaint against White

10

to enforce the terms of the check endorsement, and, following a bench trial, the court awarded Shelby the amount owing on the loan plus interest. Id.

On appeal, the Court found that the endorsement constituted "a simple contract," noting that "by endorsing and cashing the check White accepted the benefit of Shelby's financing Gevedon, and accepted the detriment of the duty of placing a lien on the Certificate of Title in favor of Shelby," and proceeded to analyze whether a breach had occurred. Id. at 1269. We noted that the language of the endorsement was "clear" and that "Shelby's offer to pay the check was conditioned on White's (as well as Gevedon's) promise to secure a lien for it on the Certificate of Title. 'Each' payee covenanted to do so. Under the plain language of the contract each is bound." Id. We affirmed the trial court's damage award, finding that a breach of the contract occurred when the title was filed with the BMV without naming Shelby as a lienholder. Id. at 1272.

As noted above, the Endorsement placed on the Check by Springleaf stated in part that negotiation of the check was authorized only "(1) when account is paid in full (2) when all liens have been satisfied and (3) when title has been mailed to the payor." Plaintiff's Exhibit D.

Cruisin' endorsed and negotiated the Check, thereby accepting the terms of this simple contract. The terms of this contract expressly state that the party negotiating the Check (Cruisin') must abide by certain conditions which includes mailing the title to the "payor." Black's Law Dictionary defines "payor" as "[o]ne who pays; esp., a person responsible for paying a negotiable instrument." BLACK'S LAW DICTIONARY 1166 (8th ed. 1999). Here, Springleaf is the payor and both George and Cruisin' are payees on the

11

Check. Thus, Cruisin' agreed when it endorsed and negotiated the Check that it would mail the title to Springleaf, and, pursuant to the Letter accompanying the Check, list Springleaf as a lienholder on the title. Cruisin' did not mail the title to Springleaf – it handed the title to George, who did not file the title with the BMV and subsequently stopped paying on the Loan Agreement. This conduct by Cruisin' was a breach of its contract under the Endorsement.

To the extent that Cruisin' cites to Peoples for the proposition that it was George's responsibility to ensure that Springleaf's financing was secured on the title, we note that both the facts and the language of the endorsement in Peoples are distinguishable. In that case, Peoples Bank filed a complaint to enforce its rights under three promissory notes executed by defendant Henry Price. 714 N.E.2d at 713. Price had entered into an agreement with Timothy Luther in which Price would execute a promissory note, obtain a check made payable to both Price and Luther, endorse the check and provide it to Luther for the purchase of luxury automobiles, and Luther would resell the automobiles and the men would split the profits. Id. at 714. Each note provided that it would be secured by the particular automobile to be purchased and specified a VIN. Id. The checks issued by the bank contained endorsements "providing that title to the vehicle in question would be placed in the name of Price, and, *that Price, by accepting and/or endorsing the check,* guaranteed that the application for Certificate of Title would show that Peoples maintained a first lien on each of the respective vehicles." Id. at 715 (emphasis added). Thus, the endorsement at issue placed the duty of perfecting the lien on the automobiles on Price. By contrast, the Endorsement here states that "[y]ou are authorized to negotiate

12

this check" only when certain conditions, including mailing the title to Springleaf, had occurred. Plaintiff's Exhibit D. Cruisin' negotiated the check and accordingly, the conditions recited in the Endorsement were directed at, and applied to, Cruisin'.

We conclude that the court did not err in entering judgment in favor of Springleaf and ordering Cruisin' to reimburse Springleaf for the amount of the Check, which was $2,500.02, plus court costs of $159.00. As indicated in Note 4 above, it appears that the court committed a scrivener's error when it stated the total amount due as $2,779.02, rather than $2,659.02, and we remand for the court to enter judgment in the amount of $2,659.02 or in the alternative to explain why $2,779.02 is the appropriate judgment amount. Further, as noted by Cruisin' in its brief, the court did not specify in its judgment whether the damage award was entered as a joint and several judgment against George. As noted, on August 24, 2011, the court entered default judgment against George in the amount of $4,313.77 plus court costs and interest. If the damage award in the judgment is not entered as a joint and several judgment with George, Springleaf could be unjustly enriched by collecting the total amount on each judgment. Indeed, although the default judgment order is not contained in the record save for an entry on the chronological case summary, logic dictates that the $4,313.77 George is to pay Springleaf contains the $2,500.02 in the judgment against Cruisin'. Accordingly, we order the court on remand to enter the judgment damage award against both Cruisin' and George jointly and severally.

CONCLUSION

13

For the foregoing reasons, we affirm the court's judgment, and we remand for reasons consistent with this opinion.

Affirmed and remanded.

VAIDIK, C.J., and NAJAM, J., concur.