Linda Morrison BOCZAR and James J. Boczar, Appellants–Defendants,

v.

Laurence M. REUBEN, Appellee–Plaintiff.

No. 49A04–0010–CV–417.

Court of Appeals of Indiana.

Feb. 9, 2001.

Linda Morrison Boczar, James J. Boczar, Appellants Pro Se.

Jane Ruemmele, Huffer & Weathers, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Judge

Appellants-defendants Linda Morrison Boczar and James J. Boczar (collectively, the Boczars) appeal *pro se* the trial court's grant of summary judgment in favor of Laurence M. Reuben on both his claims and their counterclaims. Specifically, they contend that the trial court 1) never acquired personal jurisdiction over them because of Reuben's purported failure to comply with Ind. Trial Rules 4.1(A) and (B); 2) erroneously accepted improperly designated materials for consideration of Reuben's summary judgment motion; 3) ignored genuine issues of material fact in granting summary judgment on Reuben's claims against them; and 4) improperly granted summary judgment in favor of Reuben on their counterclaims.

## FACTS

This case was spawned from what Judge Tinder described as "a project full of promise and hope" which "turned into a neighborhood nightmare." *Boczar v. Kingen*, No. IP 99–0141–C–T/G, 1999 WL 33109074, at *1 (S.D.Ind. July 2, 1999) (denying the Boczars' request for preliminary injunction). In July 1996, the Boczars purchased a home in an Indianapolis historic district governed by the Meridian Street Preservation Act (MSPA).[1] R. at 133. The Meridian Street Preservation Commission (MSPC) regulates any construction, alteration, or modification of structures within the area subject to the MSPA.[2] So, wishing to renovate their home, the Boczars set out to win the approval of the MSPC.

---

1. The MSPA is codified at Ind.Code §§ 36–7–11.2–1 to –67.

2. Ind.Code § 36–7–11.2–61.

The MSPC approved of the Boczars' first architectural design, but the Boczars soon found that they could not afford to implement it. Eventually, the Boczars modified their original design and found a contractor. Their contractor submitted the plans to another agency regulating the area—the Department of Metropolitan Development (DMD). However, the Boczars neglected to inform the first agency, the MSPC, of significant changes made to the originally approved plans. After construction began, several homeowners began to complain to members of the MSPC, calling the modified construction "unsightly" and not comporting with the "aesthetics of the neighborhood." R. at 142.

A neighborhood feud soon erupted. The Boczars sued several members of the MSPC and the DMD as well as the City of Indianapolis.[3] The conflict turned ugly as Linda was caught on videotape vandalizing a neighbor's home. She was subsequently convicted and sentenced to community service.

Reuben, an Indianapolis attorney, began representing Linda and James in December 1998 or January 1999. Among other services, Reuben represented the Boczars[4] in the above suit and drafted a quitclaim deed to convey residential property from Linda to both Linda and James. The residential property, the subject of the neighborhood dispute, was located at 4821 North Meridian Street in Indianapolis.

While representing the Boczars in the litigation, Reuben filed pleadings, attended hearings, took depositions, and participated in negotiations with opposing parties. Afterward, at the Boczars' request, Reuben withdrew his appearance in July 1999. In his affidavit in support of summary judgment, Reuben related that the reason for his withdrawal was the Boczars' inability to continue incurring legal fees.

Less than three months later, on October 14, 1999, Reuben filed a complaint against the Boczars, claiming damages for breach of contract and *quantum meruit.* His damages—$12,487.59—were the result of legal fees the Boczars had failed to pay. Copies of the complaint and summons were left in the mailbox at 4821 North Meridian Street, Indianapolis, Indiana.

On November 9, 1999, Linda Boczar filed a motion to dismiss the case for "insufficiency of service of process" and "lack of personal jurisdiction."[5] Record at 27. In her motion, she contended that no attempt was made to serve anyone at the 4821 North Meridian Street address. Linda also asserted that her dwelling house was in Moultrie, Georgia. Consequently, she argued that the trial court had not "acquired personal jurisdiction over" her and that the court should dismiss the complaint. R. at 27.

In response to the motion to dismiss, Reuben filed a motion opposing dismissal along with an affidavit recounting instances of correspondence that Reuben both sent to and received from the 4821 North Meridian Street address. For instance, attached to Reuben's affidavit were five letters received from James Boczar, sent from the 4821 North Meridian Street address. The last of the five letters was dated August 12, 1999. Moreover, on the contract for legal services, dated January 3, 1999, Linda listed her address as 4821 North Meridian Street. In addition, on numerous occasions, the Boczars spoke with Reuben by telephone from that address and sent and received facsimiles

---

3. For disposition of the all the claims, see *Boczar v. Kingen,* No. IP 99–0141–C–T/G, 2000 WL 1137713, at *1 (S.D.Ind. March 9, 2000).

4. Reuben initially filed suit on behalf of Linda, but James was later added as a plaintiff on May 24, 1999.

5. Both Linda and James filed separate motions to dismiss, but the clerk did not file James's motion, apparently identical to Linda's. Appellants' brief at 1 n. 1. Reuben does not challenge their assertion. Appellee's brief at 1 n. 1. We will proceed as if James had filed a separate, identical motion to dismiss.

from that address. Finally, Reuben's motion to withdraw as the Boczars' counsel shows that the Boczars authorized him to direct all future pleadings to the 4821 North Meridian Street address. R. at 14. The trial court eventually denied the motion to dismiss.

On March 9, 2000, the Boczars filed an answer, denying the allegations set forth in Reuben's complaint, and counterclaimed for attorney malpractice against Reuben. Reuben, afterward, filed a summary judgment motion on March 31, 2000, along with an affidavit and designated evidence in support of summary judgment. Specifically, Reuben alleged that he was entitled to judgment as a matter of law for the services he provided to the Boczars. A hearing on the summary judgment motion was held on June 12, 2000. The trial court granted summary judgment in favor of Reuben and dismissed the Boczars' counterclaims with prejudice. The Boczars now appeal.

## DISCUSSION AND DECISION

### I. Personal Jurisdiction

The Boczars contend that the trial court never acquired personal jurisdiction over them. Specifically, they claim that Reuben failed to meet the service of process requirements for individuals found in T.R. 4.1(A) and (B).

To resolve this issue, we first turn to the relevant provisions of our trial rules. The "Service of Individuals" rule, T.R. 4.1, provides:

(A) In General. Service may be made upon an individual, or an individual acting in a representative capacity, by:

(1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or

(2) delivering a copy of the summons and complaint to him personally; or

(3) *leaving a copy of the summons and complaint at his dwelling house or usual place of abode;* or

(4) serving his agent as provided by rule, statute or valid agreement.

(B) Copy Service to Be Followed With Mail. *Whenever service is made under Clause (3) or (4) of subdivision (A), the person making the service also shall send by first class mail, a copy of the summons without the complaint to the last known address of the person being served, and this fact shall be shown upon the return.*

*Id.* (emphasis supplied). The Boczars assert that, inasmuch as 4821 North Meridian Street was not their "dwelling house," any complaint or summons left there never amounted to the service required by T.R. 4.1(A)(3). In addition, they claim that Reuben failed to comply with T.R. 4.1(B) because a copy of the summons was not sent by mail after the complaint and summons were left at the 4821 North Meridian Street address.

 Our supreme court recently set forth the following formula for proving personal jurisdiction:

Because Indiana state trial courts are courts of general jurisdiction, jurisdiction is presumed. Therefore, the plaintiff need not allege jurisdiction in its complaint. A challenge to personal jurisdiction may be raised either as an affirmative defense in the answer to the complaint or in a motion to dismiss. In either case, once the party contesting jurisdiction, usually the defendant, challenges the lack of personal jurisdiction, the plaintiff must present evidence to show that there is personal jurisdiction over the defendant. *However, the defendant bears the burden of proving the lack of personal jurisdiction by a preponderance of the evidence, unless the lack of personal jurisdiction is apparent on the face of the complaint.*

*Anthem Ins. Co. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231 (Ind.2000) (emphasis supplied) (citations omitted). In other words, once the defendant contests personal jurisdiction, the plaintiff must present evidence showing that personal jurisdiction exists. However, once the plaintiff makes this showing, the burden rests on the defendant to prove a lack of personal jurisdiction by a preponderance of the evidence.

■ Similarly, to attack successfully the trial court's jurisdiction over them, the Boczars shouldered the burden of showing that the 4821 North Meridian Street address was not their "dwelling house" or "usual place of abode." "What is or is not a party's dwelling house or usual place of abode within the context of T.R. 4.1 is a question that turns on the particular facts of the case." *Doyle v. Barnett*, 658 N.E.2d 107, 109 (Ind.Ct.App.1995). Therefore, we will review a trial court's determination of a party's "dwelling house" or "usual place of abode" under an abuse of discretion standard. *See Mills v. Coil*, 647 N.E.2d 679, 681 (Ind.Ct.App.1995).

■ Here, the Boczars filed identical motions to dismiss Reuben's complaint. R. at 27. As set forth in the *FACTS*, the motions asserted that 4821 North Meridian Street was not their "dwelling house" or "usual place of abode." R. at 27. Rather, the motion asserted that their dwelling house was in Moultrie, Georgia. Thus, under *Anthem*'s framework, the Boczars can be said to have challenged the lack of personal jurisdiction. *See Anthem*, 730 N.E.2d at 1231.

As a consequence, Reuben was required to show that the trial court acquired jurisdiction over the Boczars through proper service of process. Reuben, following the dictates of *Anthem*, filed a response to the motion to dismiss and set forth facts showing personal jurisdiction. R. at 45. In an affidavit attached to his response, he showed that, when the Boczars had contracted for his legal services, they represented their address as "4821 North Me-

ridian Street." R. at 29. Furthermore, in May 1999, Reuben prepared a quitclaim deed conveying the title to the 4821 North Meridian Street residence from Linda to Linda and James. Finally, in the course of representing the Boczars, Reuben sent letters, pleadings, discovery documents, and bills both to the 4821 North Meridian Street address and by facsimile to the number at that address. James also sent Reuben at least five letters with the return address as 4821 North Meridian Street, the last one dated August 12, 1999.

With these uncontroverted facts before it, the trial court denied the motion to dismiss. Implicit in the trial court's denial of the motion to dismiss, is a finding that the Boczars' dwelling house, for the purposes of T.R. 4.1, was the 4821 North Meridian Street address. Inasmuch as the 4821 North Meridian Street residence constituted their dwelling house, Reuben fulfilled the requirements of T.R. 4.1(A) by leaving a copy of the complaint and summons at the address. Therefore, the Boczars failed to prove by a preponderance of the evidence that their "dwelling house," for the purposes of T.R. 4.1(A), was a place other than 4821 North Meridian Street.

■ The Boczars counter that, regardless of whether 4821 North Meridian Street was their dwelling house, Reuben failed to follow the procedural dictates of T.R. 4.1(B). Subdivision (B) of the trial rule provides that if service was made by leaving a copy of the summons and complaint at the dwelling house, then the person making the service "shall also send by first class mail, *a copy of the summons without the complaint*." T.R. 4.1(B) (emphasis supplied). The Boczars assert, and Reuben does not dispute, that a separate summons was not mailed to them. Appellants' brief at 6. Moreover, an examination of the record does not reveal that a separate summons was sent.

The Boczars, citing *Barrow v. Pennington*, argue that Reuben's failure to comply

with T.R. 4.1(B) prevented the trial court from ever acquiring personal jurisdiction over them. 700 N.E.2d 477 (Ind.Ct.App. 1998). In *Barrow*, a sheriff allegedly delivered a summons and complaint to Barrow's home and left them with his babysitter. *Id.* at 478. However, Barrow had no children and did not employ a babysitter. *Id.* Eventually, the trial court entered a default judgment against Barrow. On appeal, Barrow argued that the service of process did not comport with the dictates of T.R. 4.1(B) because a separate summons was not mailed to his last known address, and, therefore, the trial court never acquired personal jurisdiction over him. This court agreed and held that "T.R. 4.1(B), itself, is a jurisdictional prerequisite to obtaining personal jurisdiction." *Id.* at 479. In other words, "service of process in contravention of T.R. 4.1(B) is not sufficient to confer personal jurisdiction over a defendant." *Id.*

■ However, the exigencies compelling the *Barrow* holding are absent here. First, no one disputes that the Boczars received the complaint and the summons. The Boczars quibble, "There is no evidence in the record that the Boczars were ever served. *However, the Boczars do not contend that there was no service....*" Appellants' brief at 7 (emphasis supplied). Second, the Boczars do not argue that they were prejudiced by Reuben's failure to send the separate summons by mail. Finally, unlike the *Barrow* court, we are not presented with an appeal of a default judgment. In such cases, any doubt as to the propriety of a default judgment is to be resolved in favor of the defaulted party. *Young v. Elkhart County Office of Family and Children*, 704 N.E.2d 1065, 1068 (Ind. Ct.App.1999).

■ We note that our trial rules are to be construed together so as to effectuate the intent of the whole. *Pathman Constr. Co. of Highland Park, Ill. v. Drum Co Eng'g Corp.*, 402 N.E.2d 1, 6 n. 4 (Ind.Ct.App.1980). In addition, we must construe the trial rules "to secure the just,

speedy and inexpensive determination of every action." Ind. Trial Rule 1. Here, the purpose behind T.R. 4.1(B)—the requirement to mail an additional summons separately after leaving a copy of the complaint and summons at the dwelling place—is to increase the odds that the served party will receive timely notice of the suit. The Boczars had timely notice of the suit initiated against them. Under the circumstances here, to require the mailing of a separate summons would neither further T.R. 4.1(B)'s purpose nor secure the just determination of this action. Therefore, despite Reuben's failure to mail the separate summons, the trial court acquired personal jurisdiction over the Boczars.

## II. Summary Judgment in Favor of Reuben's Claims

The Boczars contend that summary judgment was inappropriate because Reuben failed to designate materials with specificity. They also argue that there is a genuine issue of material fact precluding summary judgment.

### A. Specifically Designated Material

■ Before addressing the merits of the summary judgment grant, we must first determine whether Reuben provided specifically designated material for the trial court to determine the propriety of summary judgment. As our supreme court explained in *Rosi v. Business Furniture Corp.*, a 1991 amendment to T.R. 56 no longer allows parties to rely on the entire record, without designating specific parts, to support or defend against summary judgment motions. 615 N.E.2d 431, 435 (Ind.1993) (applying 1991 amendment to T.R. 56(C), requiring parties "to designate ... all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion"). "To comply with the designation requirement, a party may designate an affidavit either by providing specific page numbers and paragraph citations, or

by specifically referring to the substantive assertions relied on." *Van Eaton v. Fink,* 697 N.E.2d 490, 495 (Ind.Ct.App.1998). In other words, designating evidentiary materials in their entirety fails to meet the specificity requirement. *O'Connor by O'Connor v. Stewart,* 668 N.E.2d 720, 722 (Ind.Ct.App.1996). So, "unless a document in its entirety is required as designated evidentiary matter, regardless of how concise or short the document is, in order to be properly designated, specific reference to the relevant portion of the document must be made." *Id.*

In the instant case, Reuben designated the complaint and an affidavit in support of the summary judgment in their entirety along with attached exhibits. R. at 85. In addition, Reuben listed in his "Designation": "pleadings, correspondence, research, time records, expense records, and income records." R. at 85. These documents, although listed in his "Designation," are not in the record and appear never to have been filed with his motion for summary judgment and affidavit in support thereof.

Irrespective of Reuben's failure to designate his supportive materials with specificity or to include others listed in the "Designation," we conclude that the affidavit was required in its entirety. The affidavit spans less than four pages consisting of just nineteen paragraphs. These paragraphs detail Reuben's representation of the Boczars and provide essential facts supporting his claims against them based on breach of contract and *quantum meruit.* The trial court could have properly based a summary judgment order on all the facts contained in Reuben's affidavit.

### B. *Propriety of Summary Judgment*

A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. T.R. 56(C). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way.

*Carie v. PSI Energy, Inc.,* 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the nonmoving party. *Id.* Although the non-movant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Id.*

Additionally, T.R. 56 requires the nonmovant to respond within thirty days by 1) filing affidavits showing issues of material fact, 2) filing an affidavit showing why the facts necessary to justify his opposition are unavailable, or 3) requesting an extension of time in which to file his response. *Markley Enters., Inc. v. Grover,* 716 N.E.2d 559, 563 (Ind.Ct.App.1999). If the nonmovant fails to respond or designate evidence within the thirty-day period set forth in T.R. 56(C), and the moving party has shown that he is entitled to summary judgment, the trial court is obligated to enter summary judgment against the nonmoving party. *Id.* at 564. However, even if the facts are undisputed, summary judgment is inappropriate where the evidence reveals a good faith dispute as to the inferences to be drawn from those facts. *Id.*

Here, Reuben filed his summary judgment motion, affidavit, and designations on March 31, 2000. R. at 83. The Boczars failed to file a response or request an extension of time within the thirty-day window. As noted above, the facts contained in the affidavit support Reuben's claims against the Boczars for breach of contract and *quantum meruit.* First, the affidavit shows that Linda Boczar contracted with Reuben for legal representation. The affidavit also shows that Reuben provided the bargained-for representation. R. at 78, 79. *Quantum meruit* is an "equitable doctrine that prevents unjust enrichment by permitting one to recover the 'value of work performed or

material furnished if used' by another and if valuable." *Galanis v. Lyons & Truitt,* 715 N.E.2d 858, 861 (Ind.1999) (quoting 17A C.J.S. *Contracts* § 440, at 553 (1963)). The affidavit recounts facts showing that Reuben represented James along with Linda in litigation, document preparation, negotiations, and mediation. R. at 79. He has shown that he deserves the value of his services provided to James. In short, Reuben made the requisite showing of a lack of genuine issue of material fact and that he was entitled to summary judgment as a matter of law on his claims against Linda and James.

### III. Summary Judgment Against the Boczars on Their Counterclaims

 The Boczars also maintain that the trial court improperly denied their counterclaim against Reuben for attorney malpractice. The Boczars presented counterclaims against Reuben for professional malpractice and breach of professional standards. R. at 70, 71. They complain that a separate hearing should have been held on these claims before disposing of them by summary judgment on the same day of hearings on Reuben's summary judgment. However, determining that Reuben was entitled to attorney fees necessarily implies a finding that his representation did not constitute malpractice or fall below professional standards. Moreover, the Boczars failed to designate any evidence establishing that Reuben committed malpractice. T.R. 56(E) requires parties opposing summary judgment to set forth facts admissible into evidence and that the affiant is competent to testify to those matters. Though James filed an affidavit opposing summary judgment, he is not a licensed attorney competent to render an expert opinion on Reuben's representation. Therefore, the trial court's grant of summary judgment in favor of Reuben's claims effectively disposed of the Boczars' counterclaims for attorney malpractice and breach of professional standards. *See Am. Family Mutual Ins. Co. v. Jones,* 739 F.2d 1259, 1262 n. 1 (7th

Cir.1984) ("True, the Joneses had filed a counterclaim, and it may be that the district court intended only to grant summary judgment on America Family's complaint and retain the counterclaim for further proceedings. However, our review of the pleadings compels the conclusion that a judgment in favor of American Family on its complaint effectively disposed of the Joneses' counterclaim.").

### CONCLUSION

In sum, we conclude that the trial court 1) acquired personal jurisdiction over the Boczars, 2) properly considered the affidavit submitted by Reuben supporting his summary judgment motion; 3) properly ruled in favor of Reuben on his summary judgment motion, and 4) properly denied the Boczars' counterclaims by summary judgment.

Judgment affirmed.

BROOK and BARNES, JJ., concur.