Richard D. DUNCAN, Appellant–
Plaintiff,

v.

M & M AUTO SERVICE, INC.,
Appellee–Defendant.

No. 82A01–0803–CV–129.

Court of Appeals of Indiana.

Dec. 12, 2008.

to his request for an attorney or his right to remain silent.

Robert R. Faulkner, Evansville, IN, Attorney for Appellant.

Fred S. White, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Richard Duncan filed a negligence suit against M & M Auto Service, Inc., alleging he was injured due to M & M's negligent installation and maintenance of a compressed natural gas ("CNG") system in his employer's van. The trial court granted summary judgment for M & M, and we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Duncan was an employee of the Southwestern Indiana Regional Council on Aging. The Council owned a van equipped to run on natural gas. M & M installed the CNG system in the van on May 16, 1997. M & M used a fuel conversion kit purchased from Jasper Engine, which had assembled the kit using component parts from various sources.

M & M also performed maintenance work on the CNG system. On May 11, 1998, M & M inspected the CNG system and replaced the air filter. The CNG system was within specifications. M & M recalibrated the CNG system and performed a road test.

On January 14, 1999, Duncan was filling the vans natural gas tank when gas escaped and caused an explosion in which Duncan was injured. Soon after the explosion, the Council brought the van to M & M, complaining of a leak. M & M checked the CNG system and did not find any leaks, but replaced the " 'O' ring" as a precautionary measure.[2] (Appellant's App. at 165.)

The receptacle that was part of the kit installed by M & M contained a check valve. The valve is designed to make sure that natural gas flows in only one direction. David L. Zedonis, an expert Duncan retained, opined that debris had caused the check valve to stay open, which allowed the natural gas to escape. Zedonis executed an affidavit stating that governing standards[3] required a second, redundant check valve, which should prevent gas from escaping in the event the first check valve fails. After reviewing the standards in more detail, Zedonis amended his affidavit to state a redundant check valve was not required, but was good design practice. He changed the paragraph stating M & M "should have known" a redundant valve was required to state that

1. We heard oral argument on October 29, 2008 at Oakland City University. We thank Oakland City University for its hospitality and commend counsel for the quality of their advocacy.

   Duncan has also sued IMPCO Technologies, Inc.; EDO Corporation; Jasper Engine and Transmission Exchange, Inc.; Jasper Engine Exchange, Inc.; and Southern Indiana Gas & Electric Company. However, this appeal concerns only the summary judgment for M & M.

2. M & M's designated evidence indicates the Council brought the van in for service around 11:00 a.m. on January 14, 1999. The record is unclear regarding what time the accident occurred. However, the arguments of the parties suggest that both understand the

Council took the van to M & M after the accident. (See Appellant's App. at 189) (In his brief opposing summary judgment, Duncan states, "It wasn't until a catastrophic failure occurred that M & M took any steps to replace or recommend replacement of any o-rings."); (See also Appellee's Br. at 9) ("Duncan also claims that the failure to replace the 'O' ring on the fuel intake valve prior to the incident complained of constitutes negligence.").

3. Paragraph 5d of his affidavit states, "The design and configuration of the CNG fuel system of the vehicle and of the dispensing facility were and are governed by the National Fire Protection Association (NFPA) 52— COMPRESSED NATURAL GAS (CNG) VEHICULAR SYSTEMS CODE." (Appellant's App. at 459.)

M & M "may have known" the redundant valve "would be important to have." (Id. at 464.) Zedonis described the standards as minimum requirements. According to Zedonis, a redundant check valve would have prevented the accident.

Duncan sued M & M, alleging it negligently installed and maintained the CNG system. M & M moved for summary judgment. The trial court granted summary judgment for M & M, concluding the change in Zedonis' opinion was "fatal" to Duncan's claim. (*Id.* at 28.)

## DISCUSSION AND DECISION

When reviewing a summary judgment, we apply the same standard as the trial court: summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Corr v. Am. Family Ins.,* 767 N.E.2d 535, 537 (Ind.2002). All facts and reasonable inferences drawn therefrom are construed in favor of the non-moving party, here Duncan. *Id.* at 537–38. We consider only the materials designated to the trial court. *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003).

### 1. *Specific Designation*

Duncan first argues M & M was not entitled to summary judgment because it did not designate its evidence with sufficient specificity. Ind. Trial Rule 56(C) requires parties to designate the "parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion."

"To comply with the designation requirement, a party may designate an affidavit either by providing specific page numbers and paragraph citations, or by specifically referring to the substantive assertions relied on." In other words, designating evidentiary materials in their entirety fails to meet the specificity requirement. So, "unless a document in its entirety is required as designated evidentiary matter, regardless of how concise or short the document is, in order to be properly designated, specific reference to the relevant portion of the document must be made."

*Boczar v. Reuben,* 742 N.E.2d 1010, 1016–17 (Ind.Ct.App.2001) (citations omitted), *reh'g denied.*

M & M filed a "Designation of the Record, Affidavits and Exhibits which Support Defendant M & M Auto Service, Inc.'s Motion for Summary Judgment." (Appellant's App. at 151.) That designation included the affidavit of its employee, Douglas Martin, and Duncan's deposition, and it incorporated by reference the materials designated by defendants EDO Corporation and Southern Indiana Gas & Electric Company.[4] M & M also filed a brief in support of its motion for summary judgment. Many of the factual assertions contained in the brief have no citation to the designated materials. Most of the factual assertions that include citations refer to Martin's affidavit as a whole. Martin's affidavit consists of three pages with ten numbered paragraphs and several invoices attached as exhibits.

M & M appears to have relied primarily on Martin's affidavit. The invoices do not lend themselves to specific designation

---

**4.** M & M's appendix includes materials filed by the defendant Jasper Engine. Duncan objects to any consideration of these materials because they were not a part of either Duncan's or M & M's designation of evidence. We have limited our review to materials that were designated to the trial court. *See Reeder,* 788 N.E.2d at 1240 ("Review of a summary judgment motion is limited to those materials designated to the trial court.").

by line or paragraph. Citations to specific paragraphs of the text could have been provided. However, the text is only three pages, and all of the text is relevant to the issues on summary judgment. Accordingly, the broad citations do not lead to excessive unnecessary reading, and M & M's designation of Martin's affidavit does not fail for lack of specificity. *See Boczar*, 742 N.E.2d at 1017 (designation of entire affidavit did not fail for lack of specificity where entire affidavit was required and affidavit consisted of nineteen paragraphs spanning less than four pages). Nevertheless, where M & M has failed to provide any citation to the record in support of its factual assertions,[5] we decline to search the designated evidence on its behalf.

### 2. *Strict Liability*

■ In its memorandum in support of its motion for summary judgment, M & M noted Duncan had asserted against M & M only a negligence claim and not a product liability claim. M & M argued it could not be subject to a product liability claim, pursuant to Ind.Code § 34–20–2–3, which provides, "A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product … unless the seller is a manufacturer of the product or of the part of the product alleged to be defective."

Duncan does not dispute that M & M is not the manufacturer. However, Duncan argues there is evidence that M & M is an "apparent manufacturer": "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (1965). Duncan notes the invoice M & M issued when it installed the CNG system

does not state the name of the CNG conversion kit's manufacturer; therefore, he argues there is a genuine issue of material fact as to whether M & M could be considered an apparent manufacturer.

Our Supreme Court has recognized Section 400, but only as applied to negligence claims. *Kennedy v. Guess, Inc.*, 806 N.E.2d 776, 783 (Ind.2004). Section 400 is the predecessor of the Restatement (Third) of Torts § 14 (1998), and comment b of that section states, "[M]any jurisdictions by statute treat nonmanufacturers more leniently … To the extent that a statute specifies responsibilities, the statutory terms control." Therefore, Ind.Code § 34–20–2–3 would control strict liability claims, and M & M cannot be held liable as an apparent manufacturer.

### 3. *Negligence*

■ Duncan alleges M & M was "negligent in the installation and/or maintenance" of the CNG system. (Appellants App. at 42.) Martins affidavit states:

Under the terms of the transaction evidenced by Exhibit 1 [the invoice M & M prepared when it installed the CNG system], M & M Auto Service, Inc. assumed no obligation to perform routine maintenance on the CNG conversion kit; any maintenance or repairs performed by M & M Auto Service, Inc. would have been at the specific request of [the Council].

(*Id.* at 164.)

Duncan argues this statement is a legal conclusion. However, Duncan does not argue that Martin is not competent to testify that Exhibit 1 contains the terms of the transaction. Nothing in Exhibit 1 states that M & M had an affirmative duty to maintain the van. M & M notes it recommended bringing the van back after a

---

**5.** Many factual assertions in the argument section of M & M's appellees brief also lack citations to the record, as required by Ind. Appellate Rule 46(A)(8)(a).

month, but the Council did not bring the van in for further maintenance work for nearly a year after the CNG system was installed. Duncan did not designate any evidence demonstrating M & M assumed a duty to maintain the van.

 Exhibit 2 of Martin's affidavit is the invoice for the maintenance work M & M performed on May 11, 1998. Exhibit 2 describes the work completed on that date, and Duncan notes Exhibit 2 does not specify that M & M examined the check valve. This, Duncan argues, creates a genuine issue of material fact as to whether M & M negligently maintained the van. However, if Zedonis is correct that debris caused the check valve to malfunction, examining the valve on May 11, 1998, would not have prevented the accident on January 14, 1999. In fact, one basis for Zedonis' conclusion debris caused the accident was that there were no problems with leaks prior to the incident or immediately thereafter.

Finally, Duncan argues M & M was negligent because it did not install a redundant check valve when the CNG system was installed or when the van was serviced on May 11, 1998. Duncans original position had been that the governing standards required a redundant check valve. However, when Zedonis was deposed, he testified he had been mistaken in his affidavit when he said the redundant check valve was required. He offered an amended affidavit stating a redundant check valve was good design practice and "M & M may have known that a [redundant] backflow check valve was required or would be important to have." (*Id.* at 464.) It is undisputed, however, that M & M did not design or manufacture the CNG system installed in the van.

Duncan notes the evidence M & M was a certified installer of Jasper CNG systems and at least one M & M employee attended a multi-day training session on CNG systems. The record does not indicate whether the training or certification process included any information about redundant check valves. Zedonis' conjecture that M & M may have known a redundant check valve was advisable is insufficient to create a genuine issue of material fact. Therefore, we affirm the judgment of the trial court.

Affirmed.

BAKER, C.J., and BROWN, J., concur.