## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 26 2018, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Daniel L. Lauer | Daniel J. Borgmann |
| Stucky, Lauer & Young, LLP | Helmke Beams, LLP |
| Fort Wayne, Indiana | Fort Wayne, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stephen Levendoski, Karen Levendoski, and Kathleen (Jensema) Gross, | June 26, 2018 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 18A-PL-360 |
| v. | Appeal from the Allen Superior Court |
| Stanley Stevens, | The Honorable Nancy E. Boyer, Judge |
| *Appellee-Defendant* | Trial Court Cause No. 02D01-1703-PL-119 |

**Baker, Judge.**

[1] Stephen Levendoski, Karen Levendoski, and Kathleen Gross (collectively, the Levendoski Children) appeal the trial court's order granting summary judgment in favor of Stanley Stevens (Stanley) on the Levendoski Children's complaint for the partition and sale of property owned by Stanley and Sarah Levendoski (Sarah) at the time of her death. The Levendoski Children argue that the trial court erred by denying their motions to strike insufficient defense and designated evidence and by granting summary judgment in Stanley's favor. Finding no error, we affirm.

## Facts

[2] Sarah died on March 30, 2008, from mesothelioma complications. She was survived by her husband, Stanley, and the Levendoski Children, who were the product of a prior marriage.

[3] In August 2001, Stanley and Sarah acquired title to a residence (Wood Moor) as tenants in common, as they had not yet married at that time. In June 2002, Stanley and Sarah were married, but never converted their interest in Wood Moor to something other than a tenancy in common.

[4] Sarah's will was executed prior to her marriage to Stanley and named the Levendoski Children as her sole devisees and legatees. At the time of her death, her one-half undivided interest in Wood Moor passed to the Levendoski Children, but they were unaware that the property was owned as a tenancy in common so they did not realize that they held that interest. In May 2008, Stephen probated Sarah's will but did not seek estate administration because

her estate was less than the statutory threshold of $50,000. In his closing statement, Stephen stated that there were no debts, liens, or encumbrances against any of Sarah's assets, but in fact, her funeral cost approximately $8,000 and she owed Home Depot approximately $16,000. Stanley paid these debts. If Sarah's estate had covered those costs, it would have been worthless and the Levendoski Children would have taken nothing, as the value of Sarah's remaining assets totaled approximately $15,000.

[5] Wood Moor remained vacant from the time of Sarah's death to the spring of 2009, when Stanley began to rent it out through an agent. Stanley has continued to pay all obligations related to the property, including mortgage payments, real estate taxes, insurance, repairs, and utilities.

[6] Sometime after Sarah's death, Stanley saw a television ad for a law firm handling class action mesothelioma claims. Stanley called the firm, which also communicated with Stephen. Ultimately, the family received a settlement totaling approximately $160,000.[1]

[7] The Levendoski Children and Stanley opened a new estate for Sarah and, in November 2012, signed a Family Settlement Agreement (the Agreement) regarding the distribution of the settlement. The Agreement provided that each person would receive 25% of the settlement proceeds. In exchange, Stanley

---

[1] There are discrepancies in the record as to the value of the settlement, but its precise value is irrelevant for the purposes of this appeal.

waived any entitlement to reimbursement for his payment of Sarah's funeral expenses and debts, as well as the rights to seek a statutory allowance, one-third interest in Sarah's personal property, or to elect to take against her will. The Levendoski Children, in turn, "hereby forever waive any rights that they may have individually or collectively to claim any of the decedent's property that is in the possession of the Surviving Spouse at the time of the execution of this Agreement." Appellants' App. Vol. III p. 75. The Agreement, which was approved by a trial court in November 2012, is explicitly intended "to compromise and settle all claims, controversies, and disputes existing between or among them in any way arising out of or related to the estate of the Decedent." *Id.*

[8] At some point after the Agreement was executed, Stanley learned the significance of the term "tenants in common" when he attempted to remove Sarah's name from the Wood Moor real estate tax bill. Subsequently, he contacted Stephen regarding financial assistance for repairs to the property. Stephen declined and, on March 21, 2017, the Levendoski Children filed a petition for the partition and sale of Wood Moor.

[9] On September 8, 2017, Stanley filed a motion to dismiss and/or for summary judgment. The same day, the Levendoski Children filed a cross-motion for summary judgment. On September 29, 2017, the Levendoski Children filed a motion to strike Stanley's designated evidence and a motion to strike his defense of waiver as insufficient because it had not been pleaded in his original

answer. On October 2, 2017, Stanley filed a motion for leave to file an amended answer.

[10] On October 11, 2017, the trial court held a hearing on all pending motions. At the beginning of the hearing, the trial court granted Stanley's motion for leave to file an amended answer and denied the Levendoski Children's motion to strike insufficient defense. The trial court then offered counsel two options: either (1) having argument regarding the remaining motion to strike, which would require rescheduling the summary judgment argument; or (2) taking the motion to strike under advisement and proceeding as planned with the summary judgment argument. Counsel for both parties agreed to the second option, and the trial court then heard argument on the competing summary judgment motions.

[11] On January 18, 2018, the trial court entered summary judgment in favor of Stanley, summarily denied the Levendoski Children's motion to strike Stanley's designated evidence, and found all other pending motions were moot. In relevant part, the trial court found as follows:

> . . . As a result of the execution of the Family Settlement Agreement, the Levendoskis have no interest in [Wood Moor] and lack standing to bring this action.

> The Levendoskis contend they could not have given up their claim in the one-half (1/2) interest of the Wood Moor property because they did not know it existed at the time they signed the Family Settlement Agreement.

*** 

The Warranty Deed vesting the Wood Moor property in Stan[ley] and Sarah was duly recorded on September 10, 2001. As such, it was notice to the world of Stan[ley] and Sarah's ownership interests. The Deed was properly acknowledged and placed in the record as required by statute.

The Levendoskis have not sought to set aside the Family Settlement Agreement on the basis of fraud. It appears that the Levendoskis desire to not only retain all the benefits they reaped under the Family Settlement Agreement, but also to now claim an interest in the Wood Moor property. Apparently, the Levendoskis desire to retain the original $15,751.26 estate assets, which they divided amongst the three (3) of them. They do not recognize an obligation to reimburse Stan[ley] for the funeral or debt payments made by him. . . .

The Family Settlement Agreement was approved by the Court on November 27, 2012. It is a valid and binding agreement, to which all of the "Heirs at Law" compromised and settled any and all disputes or claims. As a result, the Levendoskis have no interest in the Wood Moor property. Since the Levendoskis are not owners of an undivided one-half (1/2) interest in [Wood Moor], they are not entitled to a partition and/or sale of [Wood Moor].

Appealed Order p. 9-11. The Levendoski Children now appeal.

# Discussion and Decision

## I. Non-Dispositive Motions

[12] The Levendoski Children first argue that the trial court erroneously denied their motions to strike designated evidence and to strike insufficient defense.[2] Indiana Trial Rule 12(F) provides that when a party files a motion to strike, "the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter." Ruling on a motion to strike is a matter within the trial court's discretion, and we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before it. *Allstate Ins. Co. v. Hatfield*, 28 N.E.3d 247, 248 (Ind. Ct. App. 2015).

## A. Motion to Strike Designated Evidence

[13] The basis of the Levendoski Children's motion to strike Stanley's designated evidence was a contention that much of the designated evidence supporting Stanley's summary judgment motion and response to their summary judgment

---

[2] Stanley asserted multiple affirmative defenses, which the Levendoski Children insist are improper. They contend that the trial court should have ruled in their favor on these affirmative defenses. Stanley conceded below that he was not entitled to relief based on these affirmative defenses, nor did the trial court grant relief on this basis. Therefore, we need not and will not consider this argument.

The Levendoski Children also argue that many of the trial court's findings of fact are "contested, irrelevant and immaterial." Appellants' Br. p. 11. As the key facts underlying the trial court's order are undisputed and the allegedly irrelevant and immaterial findings did not contribute to the trial court's judgment, we find that any error was harmless and decline to consider the argument in greater detail.

motion was immaterial and non-specific.[3]  Indeed, a party seeking or opposing summary judgment must designate its evidence with sufficient specificity. *Duncan v. M & M Auto Serv., Inc.*, 898 N.E.2d 338, 341 (Ind. Ct. App. 2008). Designating evidentiary materials in their entirety fails to meet the specificity requirement.  *Id.*

[14]  Here, the Levendoski Children note that Stanley designated twenty-three items in support of his summary judgment motion and contend that his "designation of evidence contained everything but the proverbial 'kitchen sink.'  By way of example, Stanley's entire 122 page deposition was designated with the exception of only twelve (12) pages and page and line number references were omitted."  Appellants' Br. p. 11 (internal citation omitted).

[15]  Stanley concedes that he could have done a better job of reducing the amount of materials he submitted as designated evidence.  We agree.  We also agree with Stanley, however, that there is no specific form by which a party is required to designate evidence and that, while he may have been over-inclusive, the trial court concluded that it was sufficiently able to read and understand the salient

---

[3] Stanley argues that the Levendoski Children have waived this argument by agreeing to let the trial court take the issue under advisement while the parties presented their summary judgment arguments.  We do not find that agreeing to let the matter taken under advisement amounts to a waiver of a right to challenge the trial court's later ruling on the issue.

portions of the evidence.  We decline to second-guess the trial court in this regard.[4]

## B.  Motion to Strike Insufficient Defense

Next, the Levendoski Children contend that the trial court should have granted their motion to strike insufficient defense.  This motion was premised on the fact that Stanley did not include the affirmative defense of waiver in his original answer.  *See* Ind. Trial Rule 8(C) (requiring that affirmative defenses must be pleaded in the answer).  In response to the motion, Stanley sought, and the trial court granted, leave to file an amended answer containing the waiver defense.

The Levendoski Children do not argue that the trial court erred by permitting Stanley to amend his answer, nor do we find any error.  Indiana Trial Rule 15(A) provides that, under these circumstances, a party may amend his pleading by leave of course, and "leave shall be given when justice so requires."  Here, the Levendoski Children were well aware of the existence of the Agreement and that Stanley was raising a waiver defense; therefore, they were not prejudiced by the amendment of his answer.  Moreover, the amendment occurred before the matter had even been set for trial, meaning that even if it caught them by surprise, they would have had plenty of time to prepare to

---

[4] Moreover, in ruling in favor of Stanley, the trial court relied primarily on undeniably relevant portions of the evidence—primarily the Agreement itself.  Therefore, even if the trial court had granted the motion to strike, the salient evidence would have remained in the record and the result would have been the same.  Thus, any error was harmless.

respond to it. Under these circumstances, the trial court did not err by permitting Stanley to amend his answer. And once the amendment occurred, the waiver defense was no longer insufficient, meaning that the trial court properly granted the motion to strike.

## II. Summary Judgment

[18] Finally, the Levendoski Children contend that the trial court should have denied Stanley's summary judgment motion and instead granted theirs. Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

[19] It is undisputed that at the time of Sarah's death, she and Stanley held title to Wood Moor as tenants in common. A tenancy in common

> is property held by two or more persons by several and distinct titles. Tenants in common are united only by their right to possession of the property. The rights and interests of tenants in common are several, and there is no unity of title between them.

*Windell v. Miller*, 687 N.E.2d 585, 588 (Ind. Ct. App. 1997). Unlike other types of ownership, such as joint tenancy, there is no right of survivorship for tenants in common. *E.g.*, *Trust Agreement of Westervelt v. First Interstate Bank of N. Ind.*, 551 N.E.2d 1180, 1181 (Ind. Ct. App. 1990); *Robison v. Fickle*, 167 Ind. App. 651, 665, 340 N.E.2d 824, 833 (Ind. Ct. App. 1976). Therefore, when Sarah died, her interest in Wood Moor passed onto her children, who were her sole devisees and legatees, rather than to Stanley.

## A. Does Agreement Language Encompass Wood Moor?

[20] The primary question we must answer is this: did the Levendoski Children waive their interest in Wood Moor when they executed the Agreement? First, we must consider whether the Agreement waiver language encompassed their interest in Wood Moor. An agreement for division of property is an ordinary contract, and we therefore interpret such an agreement using ordinary contract principles. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). Interpretation of a contract is a pure question of law to which we apply a de novo standard of review. *Cruisin', Inc. v. Springleaf Fin. Servs. of Ind.*, 12 N.E.3d 889, 894 (Ind. Ct. App. 2014). The paramount goal of any contract interpretation is to determine and effectuate the intent of the parties when they made the agreement. *Johnson*, 920 N.E.2d at 256. If a contract's terms are clear and unambiguous, courts

must give those terms their clear and ordinary meaning. *Cruisin'*, 12 N.E.3d at 894. When the language of a contract is unambiguous, the intent of the parties is determined from within the four corners of the instrument. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006).

[21]   Here, the Agreement notes that the subsequent estate was opened to administer the mesothelioma settlement proceeds. Appellants' App. Vol. III p. 73. It also provides that it is binding on both Stanley and the Levendoski Children. *Id.* at 74. The Agreement also contains the following relevant provisions:

> 3.   The "Heirs at Law"[5] agree that all personal property in which the Decedent had an ownership or possessory interest at the time of her death already has been shared out among them. Therefore, the Heirs at Law agree that all property in the possession of the Surviving Spouse at the time of the execution of this Agreement is and shall remain his sole property and all property in possession of the Decedent's Children is and shall remain their sole property.
>
> 4.   Settlement of Surviving Spouse's Interest. The Decedent's Surviving Spouse hereby forever waives any entitlement that he may have under Indiana law to the following:
>
> - Reimbursement for the payment of any funeral expenses;
> - Reimbursement for any of the decedent's debts that he may have settled after her death;

---

[5] The "Heirs at Law" included Stanley and the Levendoski Children. Appellants' App. Vol. III p. 74.

- The right to receive a Statutory Allowance in the sum of Twenty-Five Thousand Dollars ($25,000) pursuant to the provisions of IC § 29-1-4-1;
- The right to a one-third (1/3) interest in the decedent's personal property under IC § 29-1-2-1; and,
- The right to elect to take against decedent's will pursuant to IC § 29-1-3-1.

5. Settlement of Decedent's Childrens' Interests. The Decedent's Children hereby forever waive any rights that they may have individually or collectively to claim any of the decedent's property that is in the possession of the Surviving Spouse at the time of the execution of this Agreement.

\*\*\*

7. Settlement of All Matters. The "Heirs at Law" intend hereby to compromise and settle all claims, controversies, and disputes existing between or among them in any way arising out of or related to the estate of the Decedent. . . .

*Id.* at 53.

[22] The Levendoski Children argue, essentially, that the purpose of the Agreement was to disburse the settlement proceeds and that the Agreement was not intended to resolve any issues related to real estate ownership. They also contend that, to the extent the above provisions waive their right to claim an interest in property, the property referenced in the Agreement was *personal* property, not *real* property.

[23]     We disagree.  While the catalyst for the subsequent estate and the Agreement may have been division of the settlement proceeds, it is apparent from the language above that, as part of their bargain, the parties intended to resolve all potential outstanding issues separate and apart from the settlement proceeds. To that end, the bargain they struck covered any possible remaining claims Stanley may have had, including those wholly unrelated to the settlement proceeds.  Likewise, the bargain covered any possible remaining claims the Levendoski Children may have had to Sarah's property in Stanley's possession, including those wholly unrelated to the settlement proceeds.

[24]     The Levendoski Children insist that the references to "property" mean only personal property, rather than real property.  We disagree, but even if we were to accept that contention as true, Paragraph 7 clearly states that the Agreement was intended "to compromise and settle *all* claims, controversies, and disputes . . . arising out of or related to the estate of the Decedent."  *Id.* (emphasis added).  After examining the contract as a whole, we can only conclude that the Agreement language did, indeed, encompass Sarah's interest in Wood Moor.

## B.  Did Levendoski Children Waive Their Interest By Executing the Agreement?

[25]     Having found that the Agreement language included real estate interests, we must determine whether, by executing the Agreement, the Levendoski Children waived their right to assert their interest in Wood Moor.  It is undisputed that the Levendoski Children did not have actual knowledge of their interest in

Wood Moor at the time they executed the Agreement.[6]  What we must determine, therefore, is whether they can be charged with the knowledge of their interest at the time they signed the Agreement.

[26]  "Constructive knowledge" is knowledge "that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person . . . ." *Black's Law Dictionary* 876 (7th ed. 1999).  In other words, knowledge of some fact or event is sometimes imputed to a party who was negligent in failing to obtain such knowledge.

[27]  In this case, the Levendoski Children knew that Sarah and Stanley owned Wood Moor at the time of her death.  They *assumed*, but did not verify, that Sarah and Stanley owned the property as joint tenants with right of survivorship.  The title to the property was duly recorded.  Therefore, had the Levendoski Children sought out that information, they would have easily procured it, learning in a timely fashion that Sarah's interest as tenant in common had passed to them.  It would be reasonable to conclude that at the time Stephen probated Sarah's will, he should have undertaken this investigation.  But he did not, nor did either of his siblings.  In our view, had the Levendoski Children exercised reasonable care and diligence, they would have known of their interest in Wood Moor.

---

[6] They do not allege that Stanley fraudulently concealed this information.

[28] Under these circumstances, we find that the trial court properly concluded that the Levendoski Children had constructive knowledge of their interest in Wood Moor at the time they executed the Agreement. As a result, when they executed the Agreement, they waived their interest in Wood Moor and had no right to seek partition and sale of that property.[7] The trial court properly granted summary judgment in favor of Stanley.

[29] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.

---

[7] Relevant to this case is the statute providing that a person may compel partition of land held in tenancy in common if that person holds an interest in the land. Ind. Code § 32-17-4-1(a)(1)(A).